Marcelino AGUIRRE–
MATA, Appellant,

v.

The STATE of Texas.

No. 2115–00.

Court of Criminal Appeals of Texas,
En Banc.

May 14, 2003.

Tony Aninao, Houston, for Appellant.

Alan Curry, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, WOMACK, KEASLER, and COCHRAN, JJ., joined.

This case is here on discretionary review a second time. Previously, this Court unanimously held that a trial court's error in failing to show on the record that it admonished a guilty-pleading defendant on the range of punishment is nonconstitutional error, subject to the harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See Aguirre–Mata v. State,* 992 S.W.2d 495, 499 (Tex.Cr.App. 1999) (admonishments embodied in Article 26.13(a), Texas Code of Criminal Procedure, are not constitutionally required). We exercised our discretionary authority to revisit that unanimous holding which we now reaffirm. We also exercised our discretionary authority to review the Court of Appeals' Rule 44.2(b) harm analysis.[1]

---

1. The sole ground for review in appellant's    discretionary review petition states:

██ It is undisputed that the trial court erred in failing to show on the record that it admonished appellant on the range of punishment when appellant pled guilty to the charged offense. *See Aguirre–Mata,* 992 S.W.2d at 496. On direct appeal, the Court of Appeals, in reversing appellant's conviction, decided that this was constitutional error subject to the harm analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure, which, according to the Court of Appeals, would usually require a reversal in cases like this. *See Aguirre–Mata v. State,* 992 S.W.2d at 496; *Aguirre–Mata v. State,* 962 S.W.2d 264, 267 (Tex.App.-Houston [1st Dist.] 1998). On discretionary review of that decision, we unanimously held that this was nonconstitutional error subject to the harm analysis under Rule 44.2(b), and we remanded the case to the Court of Appeals to conduct this harm analysis. *See Aguirre–Mata,* 992 S.W.2d at 499.

On remand, the Court of Appeals, in affirming appellant's conviction, reluctantly applied this harm analysis and decided that the trial court's error in failing to show on the record that it admonished appellant on the range of punishment was harmless under Rule 44.2(b). *See Aguirre–Mata v. State,* 26 S.W.3d 922, 925–26 (Tex.App.-Houston [1st Dist.] 2000); *see generally Burnett v. State,* 88 S.W.3d 633 (Tex.Cr.App.2002). The lead opinion in the Court of Appeals, however, believed that our prior unanimous decision in this case directly conflicted with the Supreme Court's decision in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *See Aguirre–Mata,* 26 S.W.3d at 924. A concurring opinion in the Court of Appeals agreed and also as-

serted that our prior unanimous decision in this case was "embarassing[ly]" inconsistent with other Supreme Court precedent. *See Aguirre–Mata,* 26 S.W.3d at 927–29 (O'Connor, J., concurring). The Court of Appeals invited this Court to reconsider its prior unanimous decision in this case. We accepted this invitation.

The beginning point of the analysis is the Supreme Court's decision in *Boykin v. Alabama.* There the defendant was sentenced to death by an Alabama jury after he pled guilty to five indictments charging common-law robbery. *See Boykin,* 89 S.Ct. at 1710–11. The record was completely silent "concerning [the] plea." *See Boykin,* 89 S.Ct. at 1710 ("so far as the record show[ed], the judge asked no questions of [the defendant] concerning his plea, and [the defendant] did not address the court"). The defendant claimed in the Supreme Court that imposition of the death penalty for common-law robbery was cruel and that permitting an Alabama jury to sentence him to death without any standards to guide its discretion was a denial of due process. *See Boykin,* 89 S.Ct. at 1711 and at 1715 n. 3 (Harlan, J., dissenting). The defendant made no claim concerning the validity of his guilty plea. *See id.*

The Supreme Court, however, decided that it was a violation of due process of law for the trial court to have accepted the defendant's guilty plea without an affirmative showing "spread on the record" that the guilty plea was "intelligent and voluntary." *See Boykin,* 89 S.Ct. at 1711–12 ("intelligent and voluntary" guilty plea will not be presumed from a silent record) and at 1714 (Harlan, J., dissenting) (court's decision predicated solely upon the state

---

This petition should be granted to review the conclusion of the First Court of Appeals that the trial court's total failure to admonish the appellant as to the range of punish-

ment was non-constitutional error and harmless error because it did not affect the appellant's substantial rights.

court's failure to make an "adequate" record that defendant's guilty plea was "intelligent and voluntary").[2] The Supreme Court also decided that this constitutional error in failing to make an "adequate" record required an outright reversal of the defendant's conviction meaning that no harm analysis was conducted on whether the defendant's guilty plea was in fact intelligent and voluntary. *See Boykin,* 89 S.Ct. at 1712–13 and at 1714 (Harlan, J., dissenting).

*Boykin* did not specifically set out what due process requires to be "spread on the record"[3] except to say generally that state courts should make sure that a guilty-pleading defendant "has a full understanding of what the plea connotes and of its consequence." *See Boykin,* 89 S.Ct. at 1710, 1712;[4] *see also Libretti v. United States,* 516 U.S. 29, 116 S.Ct. 356, 368, 133 L.Ed.2d 271 (1995) (noting that the Advisory Committee's Notes to the federal equivalent of Article 26.13(a)[5] characterized *Boykin* as holding that a defendant must be apprised of the fact that he relinquishes certain constitutional rights by pleading guilty).[6] *Boykin* clearly did not hold that due process requires the equivalent of the Article 26.13(a) admonishments or an admonishment on the range of punishment.[7]

On the contrary, the Supreme Court in *McCarthy v. United States,* which was decided during the same term as *Boykin,* expressly stated that the admonishments

2. *See Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 1468 n. 4, 25 L.Ed.2d 747 (1970) (the new element added in *Boykin* to the substantive requirement that a plea of guilty must be intelligent and voluntary is the procedural "requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily").

3. We note that the dissenting opinion in *Boykin* expressed some confusion on what the majority opinion in *Boykin* was holding. *See Boykin,* 89 S.Ct. at 1714 (Harlan, J., dissenting) ("[s]o far as one can make out from the Court's opinion, what is now in effect being held is ..." and "[i]f this is the basis upon which [the defendant's] conviction is being reversed ...").

4. Admonishing a guilty-pleading defendant that the consequences of a guilty plea are the admission of the factual elements of the charged crime and a waiver of various constitutional rights without admonishing the defendant on the range of punishment literally satisfies this test.

5. *See* FED.R.CRIM.P. 11(b).

6. The constitutional rights *Boykin* mentions as being waived by a guilty plea are the right to counsel, the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *See Boykin,* 89 S.Ct. at 1712.

7. We have found no Supreme Court case holding that due process requires a trial court to admonish a guilty-pleading defendant on the range of punishment or holding that a trial court's failure to admonish a guilty-pleading defendant on the range of punishment renders the guilty plea invalid. Supreme Court case law seems primarily to be concerned with insuring that a guilty-pleading defendant understand the nature of the charges to which he is pleading and with insuring that a defendant not be coerced, forced or threatened into pleading guilty. *See, e.g., Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 2259, 49 L.Ed.2d 108 (1976) (defendant's guilty plea involuntary because he did not receive adequate notice of the charges to which he pled guilty); *Brady,* 90 S.Ct. at 1469 n. 6 (importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him and the possible consequences of his plea was at the heart of *Boykin* ); *Smith v. O'Grady,* 312 U.S. 329, 61 S.Ct. 572, 573–74, 85 L.Ed. 859 (1941) (defendant's guilty plea to an aggravated burglary offense for which he received a 20 year sentence invalid because defendant thought (based on an agreement with the government) that he was pleading guilty to a simple burglary offense for which he would be sentenced to three years).

in the federal equivalent [8] of Article 26.13(a) have "not been held to be constitutionally mandated" and that these admonishments are "designed to assist the district judge in making the constitutionally required determination that the guilty plea was truly voluntary." *See McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 1170–71, 22 L.Ed.2d 418 (1969).[9] No subsequent Supreme Court decision has held that these admonishments are "constitutionally mandated."

There is, therefore, no reason to be "embarrassed" for relying on *McCarthy* for the proposition that these admonishments have "not been held to be constitutionally mandated" since that is what *McCarthy* stated.[10] In addition, the Supreme Court's recent decision in *United States v. Vonn* undermines another contention made in the Court of Appeals that *Boykin* "requires reversal without proof of harm." *See Aguirre–Mata*, 26 S.W.3d at 924 (claiming that *Boykin* "requires reversal without proof of harm" in cases like this). *Vonn* applied a similar harm standard to the one we have decided applies in cases like this.[11] *See United States v. Vonn*, 535

U.S. 55, 122 S.Ct. 1043, 1046–54, 152 L.Ed.2d 90 (2002);[12] *see also United States v. Cross*, 57 F.3d 588 (7th Cir.), cert. denied, 516 U.S. 955, 116 S.Ct. 406, 133 L.Ed.2d 324 (1995)

Finally, the Court of Appeals apparently read footnote 7 of *Boykin* to hold that "the right to be told the range of punishment when pleading guilty is constitutionally protected."[13] *See Boykin*, 89 S.Ct. at 1713 n. 7. Neither *Boykin* nor any other Supreme Court decision has so held. Footnote 7 of *Boykin* by its express language is only advisory[14] and it is also dicta; it has no binding effect. Footnote 7 of *Boykin* is also inconsistent with more recent developments such as the congressional enactment of Federal Rule 11(h) and the Supreme Court's decision in *Vonn*.

■ We also cannot say that the Court of Appeals erroneously determined that the trial court's failure to admonish appellant on the range of punishment did not affect appellant's substantial rights under Rule 44.2(b). The record contains references to the correct punishment range and

8. *See* Federal Rule 11(b).

9. *McCarthy* also decided that a trial court's failure to comply with these nonconstitutional procedural requirements was not subject to a harm analysis. *See McCarthy*, 89 S.Ct. at 1169; *Boykin*, 89 S.Ct. at 1714 (Harlan, J., dissenting) (trial court's failure to comply with Federal Rule 11 requires setting aside the plea regardless of lower court findings that the plea was in fact voluntary).

10. *But see Aguirre–Mata*, 26 S.W.3d at 928–29 (O'Connor, J., concurring).

11. *Also compare* Fed.R.Crim.P. 11(h) (any "variance from the procedures required by this rule which does not affect substantial rights shall be disregarded"), *with*, Texas Rule 44.2(b) (any nonconstitutional error or "variance that does not affect substantial rights must be disregarded").

12. We further note that Congress adopted the Federal Rule 11(h) harm standard in 1983 to reject *McCarthy's* "extreme sanction of automatic reversal." *See Vonn*, 122 S.Ct. at 1055–57 (Stevens, J., concurring in part and dissenting in part) (discussing the history and purpose of Federal Rule 11(h)). If, as the Court of Appeals claims, *Boykin* was meant to "require reversal without proof of harm" in cases like this as a matter of federal constitutional law, then Congress could not have adopted this harm standard. *See Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 2332, 147 L.Ed.2d 405 (2000) (Congress may not legislatively supersede constitutional decisions of the United States Supreme Court).

13. *See Aguirre–Mata*, 26 S.W.3d at 929 (O'Connor, J., concurring).

14. *See Boykin*, 89 S.Ct. at 1713 n. 7 (stating what trial courts are "advised" to do).

there is nothing in the record that shows appellant was unaware of the consequences of his plea or that he was misled or harmed. *See Aguirre–Mata,* 26 S.W.3d at 925–26 (record contained references to the correct punishment range and there was nothing in record that showed appellant did not know the punishment range and that, if he had known it, he would have pled not guilty); *see also Burnett,* 88 S.W.3d at 639–41 (record contained references to correct punishment range and there was nothing in record that showed defendant was unaware of the range of punishment); *Carranza v. State,* 980 S.W.2d 653, 658 (Tex.Cr.App.1998) ("conviction must be reversed on direct appeal if the record shows that a defendant was unaware of the consequences of his plea and that he was misled or harmed by the trial court's failure to admonish him regarding the range of punishment"); *cf, Vonn,* 122 S.Ct. at 1054–55 (appellate court not limited to "four corners of the transcript of the plea hearing and Rule 11" admonishments and may consult entire record when considering whether error in trial court's guilty plea admonishments affected defendant's substantial rights).

The judgment of the Court of Appeals is affirmed.

JOHNSON, J., filed a dissenting opinion in which PRICE, J., joined.

HOLCOMB, J., filed a dissenting opinion.

JOHNSON, J., dissenting in which PRICE, J., joined.

In *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)

the United States Supreme Court held that due process requires an adequate record illustrating that a defendant's guilty plea was "intelligent and voluntary." The Court further held that the record must show that a defendant who pleads guilty "has a full understanding of what the plea connotes and of its consequences." *Id.* Here appellant was sentenced to ninety-nine years confinement. Is there a more direct consequence of a plea than incarceration? How can a guilty plea be knowing or voluntary if a defendant is not informed of the possible range of punishment?

Here, appellant pled guilty to the offense of possession of a controlled substance with intent to deliver. Appellant speaks mostly Spanish, and the record reflects that an interpreter was sworn. A jury sentenced him to the statutory maximum of ninety-nine years confinement and a $250,000 fine. Appellant appealed, claiming that his guilty plea was involuntary because of the trial court's complete failure to admonish him of the possible punishment range. The First Court of Appeals reversed and remanded, holding that, because the trial court's failure to admonish appellant of the sentencing range was constitutional error, a reversal was required under Texas Rule of Appellate Procedure 44.2(a).[1] *Aguirre–Mata v. State,* 962 S.W.2d 264, 266–67 (Tex.App.-Houston [1st Dist.] 1998), *citing Whitten v. State,* 587 S.W.2d 156, 158 (Tex.Crim.App. 1979); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The court of appeals held that there was no

---

1. Texas Rule of Appellate Procedure 44.2 governs reversible error in criminal cases and specifically says:

(a) *Constitutional error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) *Other errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. . . .

affirmative showing that appellant had full knowledge of the range of punishment and that nothing in the record proved beyond a reasonable doubt that the error was harmless. *Aguirre–Mata*, 962 S.W.2d at 267.

The state filed a petition for discretionary review asking this Court to determine whether the court of appeals erred in holding that the trial court's failure to admonish under Texas Code of Criminal Procedure art. 26.13(a)(1) [2] violated appellant's federal due process rights and is therefore constitutional error, requiring review under Rule 44.2(a), or whether it was "other error," requiring review under Rule 44.2(b). We granted review of the state's petition and reversed the holding of the First Court of Appeals. *Aguirre–Mata v. State*, 992 S.W.2d 495 (Tex.Crim.App. 1999). Specifically, we held that because the trial court violated the Tex.Code of Crim. Proc., art. 26.13(a)(1), the violation was statutory and not constitutional and, therefore, required a harm analysis pursuant to Rule 44.2(b). *Aguirre–Mata*, 992 S.W.2d at 499.

On remand, the First Court of Appeals, after expressing strong disagreement with our holding requiring a harm analysis under Rule 44.2(b), found that nothing in the record showed that appellant was harmed by the trial court's error and upheld the conviction. *Aguirre–Mata v. State*, 26 S.W.3d 922, 925 (Tex.App.-Houston [1st Dist.] 2000). Appellant then filed a petition for discretionary review, asserting that the First Court of Appeals committed constitutional error when it held that the complete failure of the trial court to admonish appellant of the possible sentencing range was statutory error and, therefore, subject to a harm analysis under Rule 44.2(b).

This Court's rulings on a trial court's failure to comply with art. 26.13(a) are confusing at best. Beginning as early as the 1960's, this Court held that the failure to properly admonish a defendant of the consequences of his guilty plea by failing to advise him of the sentencing range was ground for automatic reversal without regard to harm. *See e.g. Weekley v. State*, 594 S.W.2d 96 (Tex.Crim.App.1980); *Ex parte McAtee*, 599 S.W.2d 335 (Tex.Crim. App.1980); *Whitten v. State*, 587 S.W.2d 156 (Tex.Crim.App.1979); *Fuller v. State*, 576 S.W.2d 856 (Tex.Crim.App.1979); *Stewart v. State*, 580 S.W.2d 594 (Tex. Crim.App.1979); *McDade v. State*, 562 S.W.2d 487 (Tex.Crim.App.1978); *Wright v. State*, 499 S.W.2d 326 (Tex.Crim.App. 1973); *Williams v. State*, 415 S.W.2d 917 (Tex.Crim.App.1967). The rationale behind these holdings was to insure that a defendant entered a plea with full knowledge of its consequences, as required by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *See also, Whitten v. State*, 587 S.W.2d 156, 158 (Tex. Crim.App.1979).

This rule of automatic reversal without regard to harm was first revised in 1975 when the Legislature amended art. 26.13 to provide that substantial compliance in admonishing a defendant was sufficient. TEX.CODE CRIM. PROC. ANN. § 26.13(c) (1975).[3] During the same year, this Court

---

**2.** Art. 26.13(a)(1) says:
   (a) "Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:
   (1) the range of the punishment attached to the offense; . . . ."

**3.** Art. 26.13(c) says: "In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admon-

held that a failure to fully comply with art. 26.13(a)(1) would not constitute reversible error absent a showing of injury or prejudice to the defendant. *Guster v. State,* 522 S.W.2d 494 (Tex.Crim.App.1975). We said that when the trial court gave an admonishment that did not fully comply with the terms of art. 26.13(a)(1), a defendant is required to show harm. *Guster,* 522 S.W.2d at 495.

This change caused some confusion,[4] and in *Ex parte McAtee,* 599 S.W.2d 335 (Tex. Crim.App.1980), and *Weekley v. State,* 594 S.W.2d 96 (Tex.Crim.App.1980), we attempted to clarify the issue. In *Weekley,* this Court held that, even given the 1975 amendment of art. 26.13 which allowed for substantial compliance, the complete failure to admonish an accused as to the range of punishment constitutes reversible error without resort to consideration of harm. *Weekley,* 594 S.W.2d at 97. In *McAtee,* we held that, when the trial court wholly fails to admonish a defendant of the range of punishment, substantial compliance analysis does not apply and automatic reversal is required without regard to harm. *McAtee,* 599 S.W.2d at 336.

Despite some tumult, these holdings were entirely consistent with the requirements of the United States Constitution. In *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Court concluded that "[i]t was error, plain and on the face of the record, for the trial judge to accept [a] guilty plea without an affirmative showing that [the plea] was intelligent and voluntary." *Boykin,* 395 U.S. at 242, 89 S.Ct.

1709. The *Boykin* Court stated that "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination.... Second, is the right to trial by jury.... Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record." *Id.* at 243, 89 S.Ct. 1709 (citations omitted). The Court then noted that there is reversible error where the record does not show that the defendant had "a full understanding of what the plea connotes and of its consequence." *Id.* at 244, 89 S.Ct. 1709. Finally, the Supreme Court indicated that, if a conviction was based on a plea of guilty, the record must show that the defendant understood, among other things, the permissible range of sentences that are applicable to the charge he faces.

> A majority of criminal convictions are obtained after a plea of guilty, If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, ... the permissible range of punishment.

*Id.* at 244 n. 7, 89 S.Ct. 1709.

In our pre-*Cain* cases regarding a trial court's failure to follow art. 26.13(a)(1), where the record contained *no* admonishment as to punishment range, we required automatic reversal as mandated by *Boykin,* but where there was some evidence that the trial court admonished the defendant, but simply fell short of the statutory

---

ishment of the court." TEX.CODE CRIM. PROC. ANN § 26.13(c) (1998).

4. *See e.g., Whitten v. State,* 587 S.W.2d 156 (Tex.Crim.App.1979)(where an art. 26.13(a)(4) admonishment was not given, the trial court was still in substantial compliance with the requirements of the statute); *Ex*

*parte Cervantes,* 762 S.W.2d 577 (Tex.Crim. App.1988) (plea set aside and cause remanded to trial court for failure to substantially comply with art. 26.13(a)(4).); *Morales v. State,* 872 S.W.2d 753 (Tex.Crim.App.1994)(failure to substantially comply with art. 26.13(a)(4) is grounds for reversal)

requirements, we required only substantial compliance with art. 26.13(a)(1), as permitted by art. 26.13(c). We held that evidence, in the record, of substantial compliance by the trial court with art. 26.13(a)(1) constitutes a *prima facie* showing of a knowing and voluntary plea of guilty. *Eatmon v. State*, 768 S.W.2d 310, 312 (Tex. Crim.App.1989), *citing Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex.Crim. App.1985); *Robinson v. State*, 739 S.W.2d 795 (Tex.Crim.App.1987). The burden then shifts to the defendant to show that he entered the plea without understanding the consequences of his action and was thereby harmed. *Eatmon*, 768 S.W.2d at 312.

The turning point came in 1997 when this court decided *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App.1997). *Cain* raised the issue of a trial court's failure to admonish a defendant about the deportation consequences of a guilty plea, as required by art. 26.13(a)(4). Here, we recognized that substantial compliance had sometimes been used as a rough replacement for a harmless error analysis, when that was really not its purpose. *Cain*, 947 S.W.2d at 264. We then went on to cite *Matchett v. State*, 941 S.W.2d 922 (Tex. Crim.App.1996), in which a plurality of this Court held that all errors, including a failure to admonish under art. 26.13(a)(4), are subject to a harmless error analysis. *Id.* The majority in *Cain* took *Matchett's* holding regarding art. 26.13(a)(4) and expanded it to hold that "except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Id.*

Using *Cain* as authority, we began to hold for the first time that a complete failure to comply with art. 26.13(a)(1) was subject to a harm analysis. In 1998, we held that the First Court of Appeals erred by holding that the complete failure to admonish a defendant under art. 26.13(a)(1) is automatic reversible error, without regard to harm. *High v. State*, 964 S.W.2d 637, 638 (Tex.Crim.App.1998). After *High*, we decided *Carranza v. State*, 980 S.W.2d 653 (Tex.Crim.App.1998). Here, in an effort to reconcile all of our previous case law and to create a workable test, we analyzed sections (1)-(5) of art. 26.13(a) as a whole. *Carranza*, 980 S.W.2d at 656. Applying *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), we held that the purpose and function of art. 26.13(a) is to ensure that only a constitutionally valid plea is entered and accepted by the trial court, but that art. 26.13(a) itself is statutory and does not implicate constitutional protections. *Carranza*, at 656. We went on to hold that the failure of the trial court to admonish a defendant regarding his deportation status was non-constitutional error and was, therefore, subject to a harm analysis under Rule 44.2(b). *Id.* at 658.

Our most recent review of the total failure to admonish a defendant of the applicable sentencing range was done in *Burnett v. State*, 88 S.W.3d 633 (Tex.Crim. App.2002). In *Burnett*, we held that a Rule 44.2(b) harm analysis was the proper standard of review when an appellant claims only a violation of Code of Criminal Procedure 26.13. *Burnett*, however, is not controlling here because the appellant in *Burnett* claimed only a violation of the Texas Code of Criminal Procedure; he did not make a federal due process claim. We specifically left unresolved the question of whether a trial court's failure to admonish a defendant of the range of punishment violates his federal due process rights. *Burnett* at 641.

In our first review of the instant case, we relied upon *Cain, Carranza,* and *McCarthy* and held that, even though the trial court completely failed to admonish appellant as required by art. 26.13(a)(1), the error was subject to a harm analysis. *Aguirre–Mata,* 992 S.W.2d at 499. We then moved on to decide whether the error should be analyzed under Rule 44.2(a) or (b). We said that under *Carranza,* the error should be reviewed under Rule 44.2(b); the admonishments embodied in art. 26.13(a)(1) are not constitutionally required because their purpose and function is to assist the trial court in making the determination that a guilty plea is knowingly and voluntarily entered. *Aguirre–Mata,* at 499.

In hindsight, I believe that several flaws appear in our reasoning. First, and most importantly, I think that our holding is contrary to the constitutional law of the United States as required by *Boykin v. Alabama.* In *Boykin,* the Supreme Court held that the voluntariness of a plea must appear on the face of the record or a reversal is required, without regard to harm.[5] *Boykin,* 395 U.S. at 244, 89 S.Ct. 1709. The defendant must be shown to have "a full understanding of what the plea connotes and of its consequence." *Id. See also, Parke v. Raley,* 506 U.S. 20, 37, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) ("Respondent knew, for example, . . . the sentencing and parole requirements for both offenses. . . . [. W]e think the [court of appeals] fairly inferred that respondent understood the full consequences of his . . . plea.").

Second, as mentioned above, the authority we cited in *High* and in our initial review of this case for the proposition that a complete failure to admonish a defendant about the possible sentencing range was subject to a harm analysis under Rule 44.2(b) were *Cain* and *Carranza,* which were about failure to warn of the possibility of deportation under art. 26.13(a)(4). These cases are not controlling on the issue of failure to admonish under art. 26.13(a)(1). Under *Boykin,* at 244 n. 7, 89 S.Ct. 1709, admonishment as to the range of punishment impacts the voluntariness of a plea and thereby implicates the due-process clause. There is no similar constitutional right to be admonished as to possible deportation. *State v. Jimenez,* 987 S.W.2d 886, 889 (Tex.Crim.App.1999).[6]

In *Carranza,* we used language that implied that all admonishments under art. 26.13(a) are the same. *Carranza,* at 656. I do not believe that this implication is correct; some of the admonishments included in art. 26.13(a) are constitutionally required and some are not. Texas has imposed the statutory requirement that a trial court admonish a defendant of the possible deportation consequences through art. 26.13(a)(4), but there is no similar federal or state constitutional right to such admonishment. Error under art. 26.13(a)(4) is, therefore, purely statutory and subject to analysis under Rule 44.2(b). However, as I understand the law, the right to know the range of punishment under art. 26.13(a)(1) is constitutional, and it was improper to apply *Cain* and *Carranza* to the constitutional due-process violations of art. 26.13(a)(1).

---

5. "The three dissenting justices in the Alabama Supreme Court state the law correctly when they concluded that there was reversible error 'because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.' " *Boykin,* 395 U.S. at 244, 89 S.Ct. 1709.

6. This distinction was noted by Justice Cohen in his concurring opinion in *High v. State,* 998 S.W.2d 642, 647 (Tex.App.-Houston [1st Dist.] 1999).

Third, our prior holding in this case relied upon *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and the parts of *Carranza* that relied upon *McCarthy*. *See Aguirre–Mata v. State*, 992 S.W.2d 495, 498 (Tex.Crim. App.1999). In *Carranza* and in our first opinion in this case, we cited *McCarthy* for the proposition that a plea admonishment itself is not constitutionally required, but is there merely to aid the trial court. *Aguirre–Mata*, 992 S.W.2d at 498; *Carranza*, at 656, *citing McCarthy*, at 465–66, 89 S.Ct. 1166. *McCarthy*, however, addressed Federal Rule of Criminal Procedure Rule 11,[7] not a constitutional issue. The *McCarthy* Court specifically stated that this distinction had an impact on its decision, saying, "[t]his decision is based solely upon our construction of Rule 11 and is made pursuant to our supervisory power over the lower federal courts; we

do not reach any of the constitutional arguments petitioner urges as additional grounds for reversal." *Id.* at 464, 89 S.Ct. 1166. In speaking of the voluntariness of a plea, *McCarthy* explicitly invoked the due-process clause of the United States Constitution. *Id.* at 466, 89 S.Ct. 1166. Two months after *McCarthy*, the Supreme Court decided *Boykin* and held that failure to establish the voluntariness of a plea was constitutional error.[8] *McCarthy*, therefore, cannot control violations of art. 26.13(a)(1).

In our prior opinion, we also cited *McCarthy* as support for the position that a violation of art. 26.13(a)(1) is subject to a harm analysis under Rule 44.2(b). *Aguirre–Mata*, 992 S.W.2d at 499. The *McCarthy* Court holding, however, was that "[w]e thus conclude that prejudice inheres in a failure to comply with Rule 11, for non-compliance deprives the defendant

7. At the time *McCarthy* was decided, Federal Rule 11 stated that a court could not accept a guilty plea "without first addressing [the defendant] ... personally and determining that the plea [was] ... made voluntarily with [an] understanding of the nature of the charge." *McCarthy*, 394 U.S. at 462, 89 S.Ct. 1166, *citing* Fed. Rule Crim. Proc. 11.

8. *Libretti v. United States*, 516 U.S. 29, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995), was a challenge to the forfeiture of property under the federal Rules of Criminal Procedure 11(f), which authorizes forfeiture of property acquired through illegal activity, and 31(e), which grants a right to have a jury determine what property of the defendant is subject to forfeiture. By plea bargain, Libretti had agreed to forfeit a large part of his property after a conviction for engaging in a continuing criminal enterprise. Part of that plea bargain was a listing of the property to be forfeited. The Court reviewed the interaction between Rules 11(f) and 31(e) with 21 U.S.C. §§ 848(a) and 853(a) and held that a forfeiture is part of a sentence, like a fine. *Libretti*, at 39, 116 S.Ct. 356. It then addressed Libretti's claim to entitlement to a jury trial on what property should be subject to forfeiture

and held that Rule 31(e) grants a statutory right only to jury determination of forfeitability. That right is not tied to the Sixth Amendment right to trial by jury; it is waivable by plea agreement, and Libretti was bound by his plea agreement. In regard to *Boykin*, the Court referred to the advisory committee's notes:

> Given that the right to a jury determination of forfeitability is merely statutory in origin, we do not accept Libretti's suggestion that the plea agreement must make specific reference to Rule 31(e). Nor must the district court specifically advise a defendant that a plea of guilty will result in waiver of the Rule 31(e) right. Federal Rule of Criminal Procedure 11(c) details the information a district court must communicate to a defendant in order to ensure that a guilty plea is valid. Advisory Committee's Notes on 1974 Amendment to Federal. Rule Crim. Proc. 11(c), 18 U.S.C.App., p. 731 (the Rule "codifies ... the requirements of *Boykin v. Alabama*, [ ... ], which held that a defendant must be apprised of the fact that he relinquished certain *constitutional* rights by pleading guilty.")(emphasis added)

*Libretti*, 516 U.S. at 49–50, 116 S.Ct. 356. (emphasis in original)

of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea." *McCarthy*, at 471–72, 89 S.Ct. 1166. The United States Supreme Court held that a defendant is entitled to a reversal if the statutory requirement that the trial court inquire whether a defendant understands the nature of the charges against him is not found in the record. *Id.* at 563–64, 89 S.Ct. 1166. There is no mention of a harm analysis.

I believe that the First Court of Appeals was correct in its initial opinion, which held that, when properly plead, the failure to admonish appellant of the range of punishment was constitutional error. *Aguirre–Mata*, 962 S.W.2d at 266. The next question is whether the constitutional right protected by art. 26.13(a)(1) is "structural" and therefore immune from a harmless error analysis, or whether it is the type of constitutional error governed by Rule 44.2(a), pursuant to *Cain*, 947 S.W.2d at 264, which relied upon *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), in holding that "except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error is categorically immune to a harmless error analysis." *Cain*, at 264.

*Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), is the landmark decision in which the Supreme Court first adopted the general rule that a constitutional error does not automatically require reversal of a conviction and that some constitutional errors can be considered harmless. *Chapman*, at 24, 87 S.Ct. 824. It was not until *Fulminante*, decided in 1991, twenty-two years after *Boykin*, that the Supreme Court first began labeling constitutional errors as either "structural errors" (defects in the constitution of the trial mechanism which defy analysis by "harmless-error" standards) or "trial errors" (error which may be quantitatively assessed in the context of other evidence in order to determine whether its admission was harmless beyond a reasonable doubt). *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. 1246. The Supreme Court, then, twenty-four years before it began to use the terms "structural error" and "trial error," recognized the distinction between constitutional errors that are so severe that they require automatic reversal and constitutional errors that, when analyzed within the entire record, can be deemed harmless. *Chapman*, 386 U.S. at 24, 87 S.Ct. 824. *Cain's* mandate that the error be labeled "structural" is therefore not dispositive of the question, as the term is a recently created one, while the standard which the term describes is older. It is necessary look to whether the Supreme Court treated such an error as "structural."

When choosing to apply a harm analysis to a constitutional error, the Supreme Court specifically said that "[w]e conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Chapman*, at 24, 87 S.Ct. 824. *Boykin* was decided two years later, in 1969, after the Supreme Court had already held that some constitutional errors were subject to a harm analysis. Yet, the Supreme Court ordered a reversal for the failure to establish the voluntariness of the defendant's plea, without regard to harm. *Boykin*, at 242, 89 S.Ct. 1709. *See also, Parke, supra; Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) *citing Smith v. O'Grady*, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941)("a plea does not qualify as intelligent unless a criminal defendant first re-

ceives 'real notice of the true nature of the charge against him, the first and foremost universally recognized requirement of due process.' "). I must assume, therefore, that the Supreme Court intended to place the complete failure to admonish a defendant of the full consequences associated with a plea bargain, including the applicable sentencing range, within the category of errors that are not subject to a harm analysis.

Accordingly, I would hold that: 1) when properly plead, the complete failure of a trial court to admonish under art. 26.13(a)(1) is a due-process violation and, under *Boykin*, is "structural error" and immune from harm analysis; 2) a partial admonishment under art. 26.13(a)(1) is subject to a substantial-compliance analysis as required by art. 26.13(c) and our relevant case law, with the question of harm analyzed under Rule 44.2(a); and 3) because they are not constitutionally mandated, violations of art. 26.13(a)(2)-(5) are statutory only and are subject to a harm analysis under Rule 44.2(b) and our relevant case law.

I would remand this case to the court of appeals to order a new trial. Because the Court does not do so, I respectfully dissent.

HOLCOMB, J., dissenting.

I cannot fault the court of appeals for conducting the Rule 44.2(b) [1] harm analysis this Court instructed it to perform on remand. However, regardless of whether I believe this Court's initial opinion was correctly decided, the appellant, at least on remand, raised, as harm, the constitutional claim this Court found he failed to adequately raise previously. Therefore, I would remand the case to the court of appeals to perform an analysis in line with this opinion. Because the majority does not agree, I must dissent.

Additionally, the court of appeals' harm analysis under Rule 44.2(b) was faulty. I therefore cannot agree that the court of appeals did not err in reaching its conclusion that the error was harmless. Because the majority disagrees, I must dissent.

Finally, there are additional points of error, raised by the appellant on direct appeal, that were never addressed by the court of appeals, due to the disposition of the court's initial opinion and the limited scope of the remand order. I would remand the case to allow the court of appeals to address the remainder of appellant's contentions. Because the majority does not do so, I must dissent.

I.

This Court's prior decision concluded that because the statutory admonishments were not constitutionally mandated, failure to admonish the appellant on the applicable range of punishment is merely statutory error.[2] In that decision, this Court did not address whether the Constitution requires the record to affirmatively show the appellant's knowledge and understanding of the range of punishment before a guilty plea is valid, and if so, what the effect on the appellant's constitutional rights might be of the trial court's failure to admonish on punishment. There are two reasons for this omission. First, this Court determined the appellant had not sufficiently raised the constitutional issue.[3] If he had

---

1. Tex.R.App. P. 44.2(b). Rule 44.2(a) and Rule 44.2(b) will refer to the corresponding rules in the Texas Rules of Appellate Procedure throughout this opinion.

2. *See Aguirre–Mata v. State*, 992 S.W.2d 495, 499 (Tex.Crim.App.1999).

3. *See Aguirre–Mata*, 992 S.W.2d at 499. It is unclear whether the court of appeals interpreted the appellant's claim to include an

not previously, the appellant has now done so. Second, this Court relied on its reasoning and conclusion in *Carranza*[4], a case in which the appellant did not allege constitutional error.[5] *Carranza*, however, involved the trial court's failure to admonish non-citizens of the possibility of deportation, a consequence about which the appellant's knowledge is not required for a plea to be valid.[6]

Although the appellant raised the constitutional issue on remand, the majority continues to ignore the constitutional implications of the trial court's failure to admonish on punishment range. In fact, the majority, in footnote 4, suggests that a defendant's knowledge or understanding regarding the applicable range of punishment may not be constitutionally required. I disagree with both the majority's implication and with its refusal to address the effect of the constitutional issue now before us on determining the appropriate harm analysis to apply to a trial court's error in failing to admonish an appellant on the applicable punishment range.

*Boykin* requires that the record show the defendant voluntarily and understandingly entered his plea of guilty.[7] *Boykin* also requires a defendant have "a full understanding of what the plea connotes and of its consequence."[8] This Court, as well as most federal circuit courts, following the language in *Brady*[9], have used a direct consequence test to determine which consequences of a guilty plea the defendant is constitutionally required to know for the plea to be valid.[10] A consequence is direct if it is a definite, practical consequence of a defendant's guilty plea.[11] The range of punishment to which a defendant will be subject upon pleading guilty is a definite, practical consequence of a defendant's guilty plea. Therefore, the range of punishment is one of the consequences that the record must affirmatively show the defendant understands for the plea to be valid.

Performing the statutory admonishment on the applicable punishment range ensures an affirmative showing on the record of the defendant's knowledge of that consequence. Failing to admonish on range of punishment, on the other hand, could result in a trial judge accepting a guilty plea without an affirmative showing that it was intelligent and voluntary. In such a case, the statutory error would be one of constitutional dimension, reviewed for harm under 44.2(a). However, because *Boykin* does not specify that the affirmative showing must appear in the form of an admonishment, an affirmative showing of the defendant's knowledge of the range of

---

allegation that the trial court's failure to admonish him regarding the range of punishment caused his plea to be invalid. The court of appeals determined that the claimed error was constitutional, but the only error analysis the court included in its opinion was statutory error, determining that the prosecutor's statements on voir dire did not constitute substantial compliance. *Aguirre–Mata v. State*, 962 S.W.2d 264 (Tex.App.-Houston [1st Dist.] 1998).

4. *See Carranza v. State*, 980 S.W.2d 653 (Tex. Crim.App.1998).

5. *See Aguirre–Mata*, 992 S.W.2d at 498.

6. *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex.Crim.App.1997).

7. *Boykin v. Alabama*, 395 U.S. 238, 242, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

8. *Id.* at 244, 89 S.Ct. 1709.

9. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

10. *See State v. Jimenez*, 987 S.W.2d 886, 889 (Tex.Crim.App.1999); *Ex parte Morrow*, 952 S.W.2d at 536.

11. *Id.*

punishment may possibly exist in the absence of the statutorily required admonishment. For example, the defendant, without being questioned by the court, could state the punishment range on the record and that he understood he would be sentenced within that range if he pled guilty. If the record affirmatively shows the defendant's knowledge of the applicable punishment range, the failure to admonish the defendant on the range of punishment would constitute mere statutory error, evaluated for harm under 44.2(b).

This Court's prior decision did not acknowledge that the failure to admonish could rise to the level of a constitutional error when the *Boykin* requirement for an affirmative showing of the defendant's knowledge is not otherwise satisfied. This Court has recognized that some evidentiary errors can amount to constitutional error.[12] Just as a reviewing court must determine that there was error before determining if that error was harmless, when an error is alleged that could be constitutional or mere statutory or evidentiary error, the reviewing court must determine the character of the error to determine which harm analysis to apply. Logically, this entails performing two distinct error analyses, first to determine if there was error and second to determine if that error amounted to constitutional error.

The distinction between the determination of error and the harm analysis is crucial, but can become confusing when applied to the record of a case. In *Potier,* this Court found the court of appeals properly applied the harmless-error standard for non-constitutional errors, rather than the standard for constitutional errors, because the erroneous exclusion of evidence did not amount to a denial of due process or other constitutional rights.[13] In making this determination, this Court reviewed what evidence of the appellant's defense was admitted and what evidence was excluded.[14] It determined that although the erroneously excluded evidence was relevant to the appellant's defense, the exclusion did not significantly undermine fundamental elements of the accused's defense.[15] The court of appeals, in applying the Rule 44.2(b) harmless-error standard, found the trial court's error in refusing to admit certain testimony was harmless because appellant's self-defense claim had been presented to the jury by other evidence.[16]

This Court's error analysis and the court of appeals' harm analysis sound somewhat similar. They both required the courts to look beyond the erroneous exclusion of evidence to the other evidence the appellant was able to present. However, they are distinct. The consequence of the determination that the error was not constitutional error was that the reviewing court, to affirm, did not have to find the error harmless beyond a reasonable doubt,[17] but only had to find fair assurance

**12.** *See Potier v. State,* 68 S.W.3d 657, 659, 665, 666 (Tex.Crim.App.2002)(holding the erroneous exclusion of evidence did not amount to a denial of due process.) Although this Court said it did not reach the question whether such an error "could deny due process if it infringed on an interest of a defendant so heavily as to deny the right to defend," the Court recognized that the exclusion of a defendant's evidence can amount to a constitutional violation and stated a rule for

determining if the exclusion of a defendant's evidence amounts to constitutional error.

**13.** *See Potier,* 68 S.W.3d at 665–666.

**14.** *Id.*

**15.** *Id.*

**16.** *Id.* at 658.

**17.** Tex.R.App. P. 44.2(a).

that the error did not effect the outcome of the proceeding.[18]

Similarly, in order to determine if the trial court's failure to admonish the appellant amounted to a constitutional error subject to the harmless error standard under 44.2(a) by causing the trial judge to accept a guilty plea without an affirmative showing that it was intelligent and voluntary, the reviewing court must look beyond the failure to admonish and review the entire record. In this case, although the court of appeals did review the entire record in performing its 44.2(b) harmless error analysis, the court of appeals did not perform a constitutional error analysis to determine if the error is subject to harmless error analysis under 44.2(a) or 44.2(b). As demonstrated by the different results in the court of appeals' opinions,[19] the harmless error standard may determine the disposition of the case.

The scope of the order of remand to the court of appeals did not allow that court to perform a constitutional error analysis. I believe we should remand to allow the court of appeals to make this determination. Because the majority does not address the constitutional issue and remand for further determination by the court of appeals on this issue, I dissent.

## II.

The court of appeals erred in the performance of the 44.2(b) harmless error analysis. Therefore, I cannot conclude that the court did not err in reaching the conclusion that the trial court's error was harmless. Because the majority holds that the trial court's failure to admonish on punishment range is mere statutory error subject to harm analysis under 44.2(b), I will elaborate on my disagreement with the court of appeals' application of the 44.2(b) analysis.

In *Carranza*, this Court maintained that there was no need to determine the exact analysis required under Rule 44.2(b) for failure to admonish, because the standard could not require the appellant to prove more than when there was substantial compliance.[20] Therefore, this Court found that "a defendant is required to show *no more* than that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." [21]

This Court's opinion in *Burnett* clarified the harm analysis required under 44.02(b) for failure to admonish the defendant on the applicable punishment range.[22] The reviewing court must independently, without placing a burden on either party to show harm or harmlessness, examine the record for indications of whether a defendant was aware of the punishment range and whether the trial judge's failure to admonish the defendant about the punishment range materially affected his decision to plead guilty.[23] The reviewing court must reverse if (1) the record supports an inference that the defendant did not know the consequences of his plea, which a silent

**18.** Tex.R.App. P. 44.2(b); *Ford v. State*, 73 S.W.3d 923, 925, 930 (Tex.Crim.App.2002)(Holcomb, J. *dissenting*, but agreeing with the non-constitutional harmless error standard contemplating a finding of fair assurance.).

**19.** *Aguirre–Mata v. State*, 962 S.W.2d at 267 (applying 44.2(a) reversed and remanded); *Aguirre–Mata v. State*, 26 S.W.3d 922, 926

(Tex.App.-Houston [1st Dist.] 2000)(applying 44.2(b) affirmed the conviction).

**20.** *Carranza v. State*, 980 S.W.2d at 658.

**21.** *Id.*

**22.** *Burnett v. State*, 88 S.W.3d 633 (Tex.Crim. App.2002).

**23.** *Id.* at 637–639.

record would do, and if (2) after simultaneously considering facts supporting an inference that the defendant did know the consequences of his plea, (3) the reviewing court is left with "grave doubt" on the matter.[24]

Because the court of appeals' decision on remand was delivered before this Court's opinion in *Burnett,* the court of appeals cited the harmless error standard from *Carranza,* that for a non-constitutional error harm analysis, "a defendant must show no more than that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court."[25] The court of appeals stated further that "To show harm in this case, a defendant must show he did not know the punishment range, and if he had, he would not have pleaded guilty."[26]

In determining the error was harmless, the court of appeals stated "nothing in this record shows appellant was harmed. There was no motion for new trial, and appellant neither claimed nor proved that he did not know the punishment range and that, if he had known it, he would have pleaded not guilty."[27] The court of appeals further found "nothing shows that appellant did not hear and understand [the prosecutor's statements regarding range of punishment], that his interpreter was not present, or that his attorney had not already told him the same thing."[28]

The first problem is that the language the court of appeals used demonstrates that the court consistently placed on the appellant the burden to bring forth affirmative proof of his ignorance and harm.

Also, the appellant, in his brief on remand, did claim that he did not know the punishment range and that if he had known it he would have pleaded not guilty. In his brief, appellant states:

> [T]he instant record shows on appellant's part, instead of a knowledge and comprehension of the full and correct range of punishment applicable to his case, shows a lot of confusion ... appellant was apparently of the understanding that he was actually limiting his prison exposure by what he was doing, which is clearly what he wanted to do. Had the Appellant had known for sure that his actual risk was a life sentence or a 99 year sentence and a fine of $250,000.00, he may have been unwilling to accept, by pleading guilty to the jury, that level of risk and instead tried to avoid that exposure by taking a plea bargain, or even by pleading not guilty.... (Errors in original)

Moreover, there was something in the record to indicate the appellant did not understand the prosecutor's statements. The record affirmatively shows the appellant required the use of an interpreter. This fact supports an inference that the appellant would not understand the prosecutor's statements if they were not translated for him. A record silent as to provision of a translation when one would be required for the appellant to understand the proceedings, just as a record void of comment on punishment range, would support an inference that the appellant did not understand the untranslated statement and therefore the range of punishment. Although a record might also support an

**24.** *Id.* at 638.

**25.** *Aguirre–Mata v. State,* 26 S.W.3d at 925.

**26.** *Id.(Citing High v. State,* 991 S.W.2d 925 (Tex.App.-Houston [1st Dist.] 1999))(op. on remand)(record affirmatively showed defendant was unsure of the maximum and wrong about the minimum punishment).

**27.** *Id.*

**28.** *Aguirre–Mata,* 26 S.W.3d at 925.

inference that a translation was provided, the court of appeals did not conclude that the record in this case provided fair assurance that the appellant did in fact hear and understand the prosecutor's statements, instead, it concluded that nothing in the record affirmatively demonstrated that the appellant did not hear and understand the comments.

In this case, though the record was silent regarding whether the interpreter translated the prosecutor's comments on voir dire, it did affirmatively show that the interpreter was present for at least part of voir dire. Additionally, the fact that the record was almost equally as silent regarding translations at the punishment hearing, where the only comment in the record was the trial court asking if the interpreter believed the appellant understood the translations, may support an inference that the interpreter was translating even though the record does not explicitly show that she was. Whether the inference, based on a record equally silent at trial as on voir dire, provides "fair assurance" that the appellant heard and understood the prosecutor's comments or leaves "grave doubt" that the appellant may not have heard and understood, is a matter for the court of appeals to determine. However, by placing the burden on the appellant to affirmatively show no translation was provided, the court of appeals never addressed this issue.

Additionally, the appellant's argument that he was confused regarding the punishment range to which he would be subject when pleading guilty undermines the effectiveness of the prosecutor's statement on voir dire, made while everyone still believed the appellant was going to plead not guilty, in ensuring the appellant knew and understood the range of punishment that would apply if he pled guilty. Although the applicable range of punishment does not change based on the plea, the appellant may not have understood that.

Further, the court of appeals' suggestion that, even if the court had found that the appellant did not understand the statements made at voir dire, harm would not be shown unless the record affirmatively showed that his attorney had not informed him of the range of punishment flies in the face of the statement in *Burnett* that a silent record would support an inference that appellant did not know the consequences of his plea. Courts should not speculate about what counsel may have discussed with the appellant.[29] The lack of showing on the record that defense counsel did not inform his client of the range of punishment cannot support an inference that the attorney did. Moreover, in this case the fact that the appellant surprised everyone, including his own attorney, by deciding to enter a guilty plea after the jury was selected and right before trial suggests that the appellant's attorney did not discuss the consequences of a guilty plea or the possibility of a plea agreement with his client.

What is more, it seems that at least one member of the court of appeals' panel not only placed a burden of proof on the appellant, but did not apply the standard that the error is not harmless if the court is left with a "grave doubt" on the matter. In concurrence, Justice O'Connor states "For this error on this record, it is impossible for the appellant to show that he did not hear or understand what the prosecutor was talking about when he mentioned the range of punishment.... I remain convinced that our original opinion was correct...."[30] In the court of appeals' origi-

29. *See United States v. Vonn*, 535 U.S. 55, 74, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).

30. *Aguirre–Mata*, 26 S.W.3d at 929 (O'Connor, J. concurring).

nal opinion, with which O'Connor agrees, the court found no affirmative showing that appellant had full knowledge of the range of punishment and concluded that the error involved defied analysis by harmless error standards.[31]

Next, the court of appeals, on remand, evidently finding the prosecutor's statements to be a prima facie showing that the appellant did know and understand the range of punishment, moved on to determine that the appellant's comments during the plea colloquy did not show that despite hearing and understanding the prosecutor's statements the appellant did not understand the punishment range. Though I might disagree with this conclusion based on the appellant's request for "some time or bond or something," his request for consideration for him "because I have children," and his statement that he did not want "to be wasting time," all possibly indicating the appellant did not understand the minimum time to which he would be sentenced was fifteen years, such doubt might not rise to the level of "grave doubt." The record also revealed the appellant had been convicted of drug possession in California and had served less than two years. Although there is scant evidence regarding the facts of that crime, the possible punishment range for that crime or whether he pled guilty or entered into a plea bargain, the relatively short sentence may indicate his expectations of the range of punishment to which he could be sentenced were much different than the actual applicable range of punishment.

Finally, the court of appeals did not mention that, as in *Burnett*, the punishment range was discussed in closing arguments to the jury and was included in the jury charge which was read aloud in open court. Defense counsel did not object to the charge, there was no reaction on the record or protest from the appellant when the charge was read, when the jury returned its verdict on punishment, or at appellant's sentencing. Nor did defense counsel attempt to develop a record to support a motion for new trial on the grounds that the plea was not knowing and voluntary. Again, however, such reaction is only necessary if the court finds the record otherwise affirmatively shows the appellant knew and understood the punishment range, otherwise the lack of such reaction would merely present the court of appeals with a silent record, which would support an inference that the appellant did not know or understand the applicable punishment range.

Although the court of appeals' conclusion ultimately might not be erroneous, I believe the analysis the court used to reach the conclusion is faulty and thus undermines the reliability of the court's conclusion.

### III.

On direct appeal, Aguirre–Mata raised three points of error. The court of appeals, finding the first point of error to be dispositive, did not address the second and third points of error. This Court granted the State's petition for review, determined that the court of appeals had applied the wrong harmless error standard, and remanded the case for the court of appeals specifically to conduct a harm analysis under the proper standard. On remand from this Court, the court of appeals applied the non-constitutional harmless error standard as instructed, but did not proceed to address the second and third points of error after concluding the error alleged under point one was harmless and thus not dispositive of the case. Because in the previous remand order this Court failed to di-

31. *Aguirre–Mata*, 962 S.W.2d at 267.

rect the court of appeals to consider the other points of error left unaddressed in its original opinion, we should remand the case to the court of appeals to review those remaining points of error at this time.

## IV.

The harmless error standard this Court directed the court of appeals to apply may not be appropriate in light of the appellant's allegations of harm on remand suggesting the statutory error is of a constitutional magnitude. However, even if 44.2(b) is the appropriate harmless error standard, the court of appeals erred in its application, rendering its conclusion unreliable. Also, the appellant raised other points of error on direct appeal which have not been addressed by the court of appeals. Therefore, the case should be remanded to the court of appeals to perform a constitutional error analysis, determine and apply the appropriate harmless error standard, and consider the remainder of the appellant's original points of error raised on direct appeal if necessary. Because the majority does not agree and remand for such action, I dissent.