NO. 07-05-0070-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY 26, 2007


 ______________________________



JOSEPH LEE MAXWELL, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 31ST DISTRICT COURT OF LIPSCOMB COUNTY;



NO. 1079; HONORABLE STEVEN R. EMMERT, JUDGE


_______________________________




Before CAMPBELL, J., and BOYD and REAVIS, S.J. (1)

OPINION


 Joseph Lee Maxwell appeals his conviction of the felony offense of aggravated
robbery. He presents four issues assigning error to the trial court's failure to give statutory
admonishments on his plea of guilty and two issues challenging the absence of a deadly
weapon definition in the jury charge. The State has not filed a brief in reply. Finding the
errors reflected in the record do not require reversal, we affirm the trial court's judgment.

 Appellant was charged by an indictment alleging he committed aggravated robbery
by placing the victim in fear of injury or death and that he used or exhibited a deadly
weapon, a knife. Through counsel he waived arraignment and entered a plea of not guilty. 
He also elected to have any punishment assessed by the jury. At trial, however, appellant
pled guilty before the jury, but sought a bifurcated trial with a jury verdict on guilt before the
presentation of evidence on punishment. (2) In conformity with appellant's request, the State
presented the testimony of the victim and a deputy sheriff who investigated the offense. 
The evidence showed appellant entered a convenience store and selected a package of
cigarettes. When the clerk asked how he was going to pay for them he brandished a
pocket knife in front of her and demanded money from the registers. The jury returned a
verdict of guilty. 

 The State's only witness on punishment was the victim. During his testimony on
punishment, appellant acknowledged his guilt of the indicted offense, but testified also to
his lack of prior criminal history and his motive to commit a "small crime" to avoid a
commitment he made to serve in the Navy. He also presented testimony from his father,
a family friend and the county sheriff. The jury assessed punishment at five years
confinement and a $5,000 fine. It also found appellant used or exhibited a deadly weapon. 
The trial court rendered judgment in conformity with the jury's verdicts.

 Appellant's first four issues are based on the trial court's failure to provide the
admonitions required by article 26.13 of the Code of Criminal Procedure. As relevant here
that statute requires that, before a trial judge accepts a plea of guilty or nolo contendre, the
judge admonish the defendant of the range of punishment and the possible effects of the
plea on defendants who are not citizens. Tex. Code Crim. Proc. Ann. art. 26.13(a)(1), (4)
(Vernon Supp. 2006). We accept appellant's contention that the court failed to give the
admonishments. Although the court's judgment recites that appellant "pleaded guilty,
being admonished of the consequences," no written or oral admonishments with regard to
the guilty plea appear in the record. (3) The court's failure to give the statutory
admonishments was error. (4)

 After the jury was seated, the indictment was read and appellant pled guilty. As
noted, the State then put on evidence of his guilt. A charge on guilt/innocence, to which
there were no objections, was prepared and read to the jury. Counsel presented
argument, appellant's counsel acknowledging that "[h]e has admitted . . . guilt in this case,"
but asking the jury to "make sure the State has proved everything . . . ." The jury returned
a verdict of guilty, and no complaint is raised on appeal concerning the sufficiency of the
State's evidence to support the verdict.

 The admonishments required by article 26.13 are not constitutionally required but
are designed to help the trial court ensure that the waiver of constitutional rights resulting
from a plea of guilty is made knowingly and voluntarily. Anderson v. State, 182 S.W.3d
914, 917-18 (Tex.Crim.App. 2006); Aguirre-Mata v. State, 125 S.W.3d 473, 476 (Tex.
Crim.App. 2003) (Aguirre-Mata II). Waiver of a constitutional right which is not voluntary
or is made without knowledge of the consequences violates due process. Boykin v.
Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Such
constitutional errors are reviewed under the standard set out in Rule of Appellate
Procedure 44.2(a). Where a defendant complains only of the failure to follow the dictates
of the statute, we must apply Rule 44.2(b) and determine if the error affects a substantial
right. Aguirre-Mata v. State, 992 S.W.2d 495, 499 (Tex.Crim.App. 1999) (Aguirre-Mata I). 
 Appellant has presented separate complaints of the violation of article 26.13 and violation
of his due process rights. 

 Appellant acknowledges authority holding his knowledge of the range of punishment
need not come from the judge to show he understood that consequence of his plea. See
Aguirre-Mata II, 125 S.W.3d at 476-77; Burnett v. State, 88 S.W.3d 633, 639
(Tex.Crim.App. 2002); Gamble v. State, 199 S.W.3d 619, 622 (Tex.App.--Waco 2006, no
pet.). During voir dire both the prosecutor and appellant's counsel correctly recited the
applicable range of punishment. As in Burnett, appellant's guilty plea was not given until
the conclusion of voir dire. Appellant seeks to distinguish Burnett on the basis that, there,
other required admonitions were given. We cannot agree that fact provides any distinction
from the analysis on this issue in cases such as Burnett and Aguirre-Mata II. His argument
that courts should not presume a defendant was aware of and understood counsel's
statements to the jury explaining the range of punishment is an invitation to disregard
recent authority of the Court of Criminal Appeals. This we may not do. Additionally, the
record fails to hint at any reason to question appellant's understanding here. Appellant's
own testimony revealed he is an articulate high school graduate who had been accepted
into a Texas state university, possessed no physical impairment on which he could rely to
avoid military service and "did real, real well" on a nuclear physics examination given by
a Navy recruiter. This evidence indicates appellant was capable of perceiving and
understanding the description of the range of punishment stated by the prosecutor and his
counsel. 

 Having reviewed the entire record, we find nothing that shows he was unaware of
the consequences of his plea, or that he was misled or harmed. Aguirre-Mata II, 125
S.W.3d at 476-77. We conclude the trial court's error of failing to show on the record it
complied with article 26.13 by admonishing appellant on the range of punishment did not
affect a substantial right and was therefore harmless. Id.; Tex. R. App. P. 44.2(b). 

 With respect to appellant's due process argument, we note that unlike the record
in Boykin, 395 U.S. at 240, the record is not silent concerning appellant's reasons for
pleading guilty before the jury but sheds considerable light on that subject. In addition to
his comments to the trial judge concerning the bifurcated procedure he was requesting, as
he began voir dire, appellant's trial counsel told the panel that "there are several reasons
for [his client's plea of guilty]. The truth, that is the main one. And that's what we are here
to lay out before you. We think if we are asking you to do something seriously we better
start from the start being straight. The other reason is we don't want to waste your time. 
We know it's valuable and we appreciate your time. So, with that out of the way . . . ."
Counsel then continued, devoting almost all the rest of his voir dire to inquiries concerning
sentencing, clearly attempting to prepare the prospective jurors to recommend community
supervision for his client. 

 Later, during appellant's testimony on punishment, he and his counsel had this
exchange, concerning his actions toward police after his arrest:


 During that time [after the arrest], did you cooperate with the police?



 Yes, sir.



 You told them exactly what you had done?



 Yes, sir.



 Admitted every part of the offense?



 Yes, sir.



 Just like you have done today?



 Yes, sir.


 Appellant later responded, "Yes, sir," to his counsel's question "You're pleading
guilty because that was true?" Also, from the witness stand, appellant apologized to the
victim, and, in a statement occupying some three-quarters of a page of the record,
addressed his counsel's question asking why the jury should "take a chance on you,"
through community supervision. Appellant also introduced as punishment evidence his
handwritten statement written in jail. Through these instances in the record, and others,
appellant presented himself to the jury as a thoughtful young man who acknowledged a
serious mistake borne of poor judgment but was a good candidate for a "second chance." (5) 
 Further, by virtue of the procedure utilized in appellant's trial, his plea of guilty before
the jury did not involve waiver of all the constitutional rights a criminal defendant typically
waives by pleading guilty. See Aguirre-Mata II, 125 S.W.3d at 475 n.6 (constitutional rights
waived by a guilty plea are privilege against compulsory self-incrimination, and rights to
counsel, trial by jury (6) and confrontation of accusers, citing Boykin, 395 U.S. at 243). Here,
appellant was represented by counsel throughout, was adjudged guilty by the jury and
cross-examined the State's witnesses. 

 Under the circumstances presented, we find the trial court's failure to make a record
clearly reflecting admonishment of appellant on the range of punishment did not equate
to a denial of due process. Boykin, 395 U.S. at 240. His first and second issues are
overruled.

 Appellant's third and fourth issues complain of the trial court's failure to admonish
him of the immigration consequences of conviction. Courts have held such an error is
harmless when the record shows that the defendant is a citizen of the United States. 
Anderson, 182 S.W.3d at 919; Cain v. State, 947 S.W.2d 262 (Tex.Crim.App.1997). 
Appellant's description of the record as "completely silent" as to his citizenship is
inaccurate. It contains an affidavit of financial status signed by appellant which recites his
place of birth as Lubbock, Texas. (7) Because the record affirmatively shows he is a citizen,
we overrule appellant's third and fourth issues.

 Appellant's final two issues complain of the trial court's failure to define deadly
weapon in the jury charge on guilt or innocence. (8) The definitions section of the charge
omitted the statutory definition of deadly weapon, and the application paragraph can be
read to define a knife as a deadly weapon. Appellant concedes the complaints were not
preserved for review by any objection to the trial court and reversal is required only if they
caused harm so egregious as to deprive appellant of a fair trial. Almanza v. State, 686
S.W.2d 157, 171 (Tex.Crim.App. 1984). The harm must be actual, not just theoretical. Id.
at 174; Cormier v. State, 955 S.W.2d 161, 164 (Tex.App.-Austin 1997, no pet.). To
evaluate the actual harm caused by the charge error, we review the entire jury charge, the
state of the evidence, including the contested issues and weight of probative evidence, the
argument of counsel and any other relevant information shown by the record. Almanza,
686 S.W.2d at 171. 

 Appellant cites us to Blanson v. State, 107 S.W.3d 103 (Tex.App.-Texarkana 2003,
no pet.), in which the court found egregious harm from a charge that contained the
instruction, "[a] knife is a deadly weapon." Id. at 105. Here, though, we cannot ignore
appellant's plea of guilty before the jury. His plea established the facts alleged in the
indictment, which included the allegation appellant used or exhibited a deadly weapon. 
See Fairfield, 610 S.W.2d at 776-77; Tex. Pen. Code Ann. § 29.03(a) (Vernon 2003)
(defining aggravated robbery). Too, unlike in Blanson, in which the nature of the unopened
knife as a deadly weapon was a "central issue," id. at 106, the characterization of the knife
as a deadly weapon was not a contested issue at appellant's trial. Further, the knife was
before the jury. The record shows it was a folding or pocket knife, about four inches long
when closed and with a locking, curved serrated blade about two-and-three-quarters inches
long. The investigating sheriff's deputy testified without objection that the knife was
capable of causing serious bodily injury or death. See Tex. Pen. Code Ann. § 1.07(17)
(Vernon Supp. 2006) (defining deadly weapon). We do not agree the record reflects
egregious actual harm flowing from the errors in the jury charge. (9) We overrule appellant's
fifth and sixth issues. 

 Finding no reversible error in the judgment of the trial court, we affirm the judgment.


 James T. Campbell

 Justice





Do not publish.

 
1. John T. Boyd, Chief Justice (Ret.) and Don H. Reavis, Justice (Ret.), Seventh
Court of Appeals, sitting by assignment. 
2. Asking the court to adopt his requested procedure, appellant's trial counsel told the
court, "I have done this in the past, we pled guilty, the jury has gone back, quickly, found
a guilty verdict and then we go directly into the punishment phase. And I think from a
defendant's point of view, that allows a jury to have the satisfaction of finding him guilty
before they decide what they are going to do with him." 
3. Neither does the reporter's record suggest any part of the proceeding was not
transcribed. 
4. Under the procedure employed, it might be said that the trial court did not "accept"
appellant's plea of guilty. The record shows that after receiving the plea, the court
immediately began hearing the State's evidence on guilt/innocence. The court did not
instruct the jury to find appellant guilty, but the court's comments to the jury make clear that
the court expected the jury to render a guilty verdict. Under such circumstances, the
proper procedure is that reflected in Fairfield v. State, 610 S.W.2d 771, 776-77
(Tex.Crim.App. 1981), and other cases, by which the defendant is admonished outside the
presence of the jury. 
5. Appellant's strategy met with some success. Although they did not recommend
community supervision, the jury sentenced appellant to the shortest allowable term of
incarceration. 
6. Nothing in the record shows a waiver of jury trial. See Tex. Code Crim. Proc. Ann.
art. 1.13 and 1.15 (Vernon 2005) (stating manner of waiver of jury trial).
7. See U.S. Const. amend. XIV, § 1; 8 U.S.C. § 1433(a) (each declaring persons born
in the United States as citizens).
8. We note that appellant's issues complaining of the jury charge on guilt/innocence 
treat his conviction as one based on the jury verdict, a view inconsistent with his first four
issues treating it as based on his guilty plea. We nonetheless address the issues.
9. Our conclusion appellant suffered no egregious harm from the charge error also
means his admission of guilt during punishment testimony bars his complaint, under
DeGarmo v. State, 691 S.W.2d 657 (Tex.Crim.App. 1985). Kelley v. State, 22 S.W.3d 628,
631 (Tex.App.--Fort Worth 2000, pet. ref'd) (admission of guilt at punishment waived
charge error). 



"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 











NO.
07-09-0290-CR

IN
THE COURT OF APPEALS

   FOR THE SEVENTH DISTRICT OF TEXAS

   AT AMARILLO

FEBRUARY
10, 2010

___________________________________

       JOSE
EVER GONZALEZ-GILANDO,





Appellant





v.

      THE STATE OF TEXAS,

 

_________________________________

 

FROM THE 69TH
DISTRICT COURT OF HARTLEY COUNTY;

 

     NO.
1018H; HON RON ENNS, PRESIDING

______________________________________

OPINION

______________________________________

 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 Jose Ever
Gonzalez-Gilando pled guilty to possession of a
controlled substance with intent to deliver. 
On appeal, he challenges the trial court=s
denial of his motion to suppress contending there was no reasonable suspicion
for an investigative stop.  We agree and
reverse the judgment. 

Background












On November 19, 2008, Troopers Chad Foster and Jacob
Gamez were on patrol on Highway 385 in Hartley
County.  The highway, purportedly, was a
main traffic route for drug dealers.  The
officers observed a vehicle pass them in the opposite direction and decided to
turn and follow it.  They grew suspicious
of whom they saw because 1) the vehicle in which they rode was clean or lacked
road grime, 2) the young occupants did not Afit@ the year and model of the vehicle, the latter being
a >99 Lumina, 3) the troopers thought the vehicle=s occupants should have been in a sportier car, 4)
both occupants simultaneously looked away from the officers as the vehicles met
and passed, 5) the occupants turned their hats around so they faced forward
after passing the troopers, 6) the car slowed and came to almost a complete
stop at a blinking caution light adjacent to an intersection, and 7) the driver
drove within the speed limit.  

The troopers also checked a computer database to
determine whether the vehicle in question was lawfully registered and whether
it was covered by liability insurance. 
While it was discovered that the car was lawfully registered, the
information regarding insurance was unavailable.  In other words, the information garnered from
the database did not provide the troopers basis to confirm whether or not such
insurance existed.  According to one
trooper, the circumstance meant the car could or could not have been
covered.  Because they concluded that
they could not stop the car, they decided to call a local deputy sheriff
(Fowler) to intercede.[1]













Fowler responded, caught up with the moving
vehicles, placed his patrol unit between that in which appellant rode and that
of the troopers, ran the license plate, and also determined that the vehicle he
was following had a current registration. 
So too did his search for the existence of potential liability insurance
result in the discovery that the information was Anot
available@ or the status Aundocumented.@  Nonetheless,
he decided to conduct a traffic stop of appellant and his companion.  The stop eventually resulted in the discovery
of the controlled substances underlying appellant=s
conviction. 

Standard of Review

We review the trial court=s ruling on a motion to suppress under the standard
discussed in Ford v. State, 158 S.W.3d 488 (Tex. Crim. App. 2005).  It requires us to give great deference to the
trial court=s interpretation of historical fact and assessment
of a witness=
credibility.  Id. at
493.  However, we need not give
such deference to its application of the law to the facts, especially when
those facts are undisputed.  Neal v.
State, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008), cert. denied, __
U.S. __, 129 S.Ct. 1037, 173 L.Ed.2d 471 (2009).  In that situation, we consider the matter de
novo.  Id.   

Applicable Law

Next, law enforcement personnel may briefly detain
and investigate a person when they have a reasonable suspicion that the person
is involved in criminal activity.  State v. Sheppard, 271 S.W.3d 281, 287 (Tex. Crim. App.
2008).  The officer must be able
to point to something that would lead a reasonable person to believe that the
person being detained was engaged in, had engaged in, or was about to engage in
a criminal act.  Klare
v. State, 76 S.W.3d 68, 72 (Tex. App.BHouston [14th Dist.] 2002, pet. ref=d).  Those
specific articulable facts must amount to more than a
mere hunch or suspicion.  Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  And, we look at the totality of the
circumstances in determining reasonable suspicion.  Ford v. State, 158
S.W.3d at 492-93.  Finally, the
subjective intent of the officer has no bearing on the matter.  Id. at 492.

Application of Law to Facts   

Regarding the indicia other than that concerning
insurance, none evinced criminal activity or a reasonable suspicion that
criminal activity was afoot.  This is so
irrespective of whether they are viewed separately or en masse.  

It is not a crime in this State to drive a clean
car, look away from passing police officers, drive a vehicle of one=s choice, obey traffic warnings, and abide by posted
speed limits.  Nor did either the State
or officers proffer reasonable explanation as to how one could rationally
interpret such conduct as potentially criminal. 
For instance, we are left to guess at why a young adult driving an older
car insinuated that he was a criminal. Moreover, accepting such a proposition
would be tantamount to concluding that only those young adults without
sufficient means to acquire a newer car engage in criminal activity, and such
is not the case.  Similarly insupportable
is the notion that following traffic laws and heeding traffic warnings connotes
some manner of misconduct.  Rather,
following the law tends to suggest that one is engaging in lawful activity, and
we hesitate to conclude otherwise without basis for doing so.     












As for looking away from police officers, that too
is a highly dubious indicia since others have opined
that looking at officers is equally suspicious. 
E.g., U.S. v. Barnard, 553 F.2d 389,
391-92 (5th Cir. 1977). 
If one acts suspiciously by both looking at and away from the police,
then that seems to leave no option other than to move around with eyes
closed.  Of course, the police would most
certainly deem the latter grounds for a stop if undertaken by someone driving
(and rightly so).  From early school
days, many come to believe that avoiding eye contact with authority figures is
a way to avoid notice or otherwise be left alone.  A student looking down in the classroom upon
the teacher asking a question does not ipso facto mean the student
committed a misdeed.  The same can be
said of those who look away from law enforcement officials while driving on the
roadway.  And, the State failed to
explain why the contrary is true.  

And, while it may be true that innocent people often
drive dirty cars, that hardly means that those driving
newly washed cars are violating or are about to violate the law, and
vice-versa.  

It seems as though the situation before us
exemplifies the nature of criminal conduct in general.  Simply put, criminality encompasses most any
imaginable fact or circumstance. 
Criminals come in all makes and colors. 
Some have hair, some do not.  Some
are men, some are not.  Some drive cars,
some do not.  Some wear suits, some do
not.  Some have baseball caps, some do
not.  Some want attention, some do
not.  Some have nice cars, some do
not.  Some eat spaghetti, some do not.  And, sometimes, some even engage in innocent
activity.  Yet, just because an officer
once encountered a bald male who ate spaghetti while wearing a suit who later
drove away in a particular car and ultimately engaged in criminal conduct does
not permit him to rationally deduce that everyone else who happens to do the
same things may also be engaging in misconduct. 
The same is no less true here.  It
may well be that the officers have seen young people who drive older cars and
obey traffic laws engage in illegal activity. 
But, that does not mean it is reasonable to infer that all, most, or
some other young people who do likewise must be breaking the law.  












People are free to drive any type of vehicle they
choose, slow at a blinking yellow light, look at whom they choose while
driving, and maintain a speed below the limit without expecting to be pulled
over by law enforcement officers.  See
Klare v. State, 76 S.W.3d at 72 (stating that
innocuous conduct alone does not justify an investigative stop); Sieffert v. State, 290 S.W.3d 478, 484-85
(Tex. App.BAmarillo 2009, no pet.) (concluding
that driving a vehicle through a high crime area late at night at a speed lower
than the speed limit while appearing nervous did not evince reasonable
suspicion to believe criminal activity was afoot).  Moreover, our decision remains the same even
when we factor into the equation the information at bar regarding the existence
of insurance, or lack thereof.  












Drivers are required to maintain proof of financial
responsibility to lawfully drive on our public roads.  See Tex.
Transp. Code Ann. '601.051 (Vernon 1999).  Furthermore, modern technology has apparently
given police officers the means to assess one=s
compliance with that requirement without stopping the individual.  Here, however, the information obtained by
the officers while pursuing those technological means was hardly suggestive of
anything other than the unknown.  Again,
the officers simply were informed that the data they desired was
unavailable.  And, while Fowler
unilaterally opined that this Aled him to believe that the vehicle did not have
insurance coverage,@[2] without other evidence developing the source of the
information comprising the database, explaining what was meant when insurance
information was unavailable, explaining why such information would be
unavailable, illustrating the accuracy of the database, establishing the
timeliness of the information within the database, depicting how often those
using the database were told that insurance information was unavailable,
proving that the program through which the database was accessed was even
operating at the time, and the like, we cannot accept the deputy=s inference as reasonable.[3]  

Given the absence of the evidence described above,
we can only liken the indication that the information was unavailable to Awho knows,@ and Awho knows@ falls short of being an articulable
fact upon which reasonable suspicion can be founded.  Thus, the State failed to carry its burden
and prove that the stop at issue was based on either reasonable suspicion or
probable cause and, thereby, was legitimate. 
This, in turn, leads us to conclude that the trial court erred in
denying appellant=s motion to suppress.

Without the drugs ultimately discovered in the car,
the State had little or no evidence of appellant=s
guilt.  Thus, authorizing their use to
convict him was harmful.  Accordingly, we
reverse the judgment and remand the cause to the trial court.

 

Brian Quinn 

Chief Justice   


Publish.         













[1]This is somewhat reminiscent of the
Life commercials of yesteryear where the older siblings were hesitant to taste
the cereal.  So, they decided to call AMikey@ because AMikey would eat anything.@ 
Maybe each of us is guilty of doing this at one time or another.





[2]A trooper testified otherwise, saying
that Athey could have insurance or they
may not have insurance.@ 





[3]The State argues in
its brief that, pursuant to the Texas Administrative Code, the reliability rate
of the information provided by insurers must meet 95% by January 1, 2008. See
28 Tex. Admin.
Code '5.605(b) (2009).  However, nothing in the record shows that the
administratively-required goal was attained.