**AFFIRMED as Modified; Opinion Filed March 16, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00219-CR

**ANDREW SCOTT LOTT, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1240454-M**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Evans

Andrew Scott Lott appeals his conviction for improper relationship between an educator and a student. Appellant presents eight issues in which he contends his rights to have a unitary proceeding on his plea of guilty, enter a knowing and intelligent plea, and receive effective assistance of counsel were violated. Appellant further contends the trial court erred in "refusing to require the State to demonstrate due diligence" which resulted in inaccurate information about the conditions of appellant's bond being presented to the jury. Finally, appellant contends the judgment inaccurately reflects his plea to the charge and should be reformed. We agree that the judgment inaccurately reflects appellant's plea and we modify the judgment accordingly. In all other respects, the judgment is affirmed.

# I. PROCEDURAL BACKGROUND

Appellant was indicted for having sexual intercourse with a seventeen years old student at Mesquite High School while he was employed by the school as an educator. Appellant filed an application for probation stating that he had never before been convicted of a felony offense and entered a non-negotiated plea of guilty before the jury. The trial court instructed the jury to find appellant guilty based on his plea and the jury did so. The court then proceeded to the punishment phase. After hearing evidence, the trial court instructed the jury that it could impose a sentence of confinement for two to twenty years and could choose to recommend probation of any sentence of ten years or less. The jury sentenced appellant to fifteen years' confinement and imposed a fine of $5,000. Appellant brought this appeal.

# II. ISSUES PRESENTED

## A. Bifurcated Proceeding

In his first issue, appellant contends the trial court erred in conducting a bifurcated trial in violation of his right to a unitary proceeding under article 37.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 (West Supp. 2014); *see also Brinson v. State,* 570 S.W.2d 937, 939 (Tex. Crim. App. [Panel Op.] 1978) (where defendant enters his guilty plea to a jury, no issue of the defendant's guilt should be submitted to the jury); *see also State ex rel. Wade v. Entz,* 711 S.W.2d 309, 310 (Tex. App.—Dallas 1986, orig. proceeding) (same). However, appellant failed to make any objection to the bifurcation when the trial court charged the jury to find him guilty before proceeding to the punishment phase. In *Weeks v. State*, the Texas Court of Criminal Appeals held that, in the absence of an objection, the record did not support a finding that the trial court erred in conducting a unitary trial rather than a bifurcated one. *See Weeks v. State*, 521 S.W.2d 858, 863 (Tex. Crim. App. 1975). Although the defendant in *Weeks* challenged the use of a unitary proceeding instead of a bifurcated one, we

see no substantive difference between that challenge and the one presented by appellant for the purposes of requiring a timely objection. In addition, the Texas Court of Criminal Appeals has indicated in a footnote that improperly bifurcating a guilty plea trial does not constitute reversible error. *See Frame v. State*, 615 S.W.2d 766, 767 n. 1 (Tex. Crim. App. [Panel Op.] 1981) ("Although erroneous, bifurcating a guilty plea trial does not constitute reversible error under *Basaldua v. State*, [(481 S.W.2d 851 (Tex. Crim. App. 1972)].") Accordingly, even if appellant had objected and the trial court overruled the objection and bifurcated the proceeding, there would not be reversible error. We resolve appellant's first issue against him.

## B. Admonishments and Voluntariness of Plea

In his second and fourth issues, appellant contends his right to voluntarily enter a knowing and intelligent plea was violated because the trial court failed to properly admonish him. Specifically, appellant contends the trial court never advised him regarding his constitutional rights in a contested jury trial or the consequences of his guilty plea. Appellant's arguments concern issues of both constitutional due process and Texas statutory requirements.

In *Boykin v. Alabama*, the United States Supreme Court held that a violation of constitutional due process occurs when a trial court accepts a guilty plea without an affirmative showing "spread on the record" that the guilty plea was intelligent and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 243–44 (1969). The Court in *Boykin* did not state what must be "spread on the record" to satisfy due process other than to generally require that a guilty-pleading defendant have a "full understanding" of what his plea connotes and its consequences. *See Aguirre-Mata v. State*, 125 S.W.3d 473, 475 (Tex. Crim. App. 2003). Under *Boykin*, no specific admonishments are necessary. *Id.* "So long as the record *otherwise* affirmatively discloses that the defendant's guilty plea was adequately informed, due process is satisfied." *Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013). The voluntariness of the plea may be inferred

from all of the relevant circumstances surrounding it. *See Brady v. U.S.*, 397 U.S. 742, 749 (1970).

In this case, the record shows that appellant's guilty plea was entered voluntarily and with awareness of its consequences and the rights being waived. Appellant is a college educated high school government teacher. At the time appellant first submitted his plea to the trial court, the judge asked him whether anyone was forcing or coercing him to plead guilty or if any promises had been made in exchange for his plea. Appellant responded "no." The court further inquired whether appellant understood fully that he had "an absolute right to plead not guilty before the jury" and allow them to determine his guilt or innocence. Appellant responded that he did. The judicial confession appellant signed acknowledged that he was consenting to the stipulation of the evidence and expressly waiving his rights against self-incrimination and the appearance, confrontation, and cross-examination of witnesses. The right of the defendant not to testify was discussed at length during voir dire in appellant's presence, as was the range of punishment. Appellant rejected a plea bargain offer made by the State of seven years' incarceration. The State's burden of presenting evidence to show that appellant was guilty was also discussed during voir dire. An examination of the record makes it clear that the defense strategy was to have appellant accept responsibility for his actions and persuade the jury to grant him probation based on the fact that his relationship, although prohibited by law because of the complainant's status as his student, was not otherwise improper because she had already reached the age of consent and chose to continue her relationship with him even after he was arrested. Based on these facts, we conclude the record shows appellant's plea was both voluntary and made intelligently. *See Gardner v. State*, 164 S.W.3d 393, 399 (Tex. Crim. App. 2005).

Appellant's complaint that he did not receive the admonishments required by the Texas Code of Criminal Procedure is equally unavailing. Article 26.13 of the code of criminal

–4–

procedure requires that, prior to accepting a guilty plea or a plea of nolo contendere, a trial court must admonish the defendant regarding (1) the range of punishment for the offense, (2) certain aspects of the law of plea-bargain agreements, (3) the effect a plea-bargain agreement may have on the right to appeal, (4) the effect that a conviction might have on a non-citizen, and (5) the registration requirements for defendants convicted of certain sex offenses. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13. The failure to admonish is non-constitutional error, however, and subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See Aguirre-Mata v. State*, 992 S.W.2d 495, 499 (Tex. Crim. App. 1999). Under Rule 44.2(b), any error that does not affect a substantial right must be disregarded. TEX. R. APP. P. 44.2(b).

In this case, there was no plea bargain agreement so the second and third categories of admonishments are inapplicable. There is also no indication in the record that appellant was not a citizen of the United States and appellant does not argue that he was harmed by the failure to be admonished on this issue. Lastly, the offense of which appellant was convicted is not subject to statutorily required sex offender registration. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(5). The only admonishment applicable to appellant, therefore, was on the range of punishment.

A trial court's failure to admonish on the range of punishment does not affect a defendant's substantial rights where the range is discussed in the defendant's presence before he enters his plea. *See Burnett v. State*, 88 S.W.3d 633, 635 (Tex. Crim. App. 2002). As discussed above, the range of punishment was explained several times during voir dire in this case while appellant was in the courtroom. Accordingly, appellant had notice of the punishment range before he entered his guilty plea before the jury. Because appellant had notice of the punishment range before he entered his plea, the failure of the trial court to specifically admonish him on this issue did not affect his substantial rights and was harmless. *See id.*

In addition to the admonishments required under article 26.13, appellant lists a string of other rights he contends the trial court was required to "admonish" him he was waiving by pleading guilty. Appellant points to his right to "demand the nature and cause of the accusation against him and to have a copy thereof," to have a jury trial on guilt and innocence, to not be compelled to give evidence against himself, to be heard by himself or counsel, to confront the witnesses against him, and to have compulsory process for obtaining witnesses. As we have already discussed above, appellant was specifically admonished of his right to be tried by a jury and he signed a judicial confession waiving his right against self-incrimination and to the appearance, confrontation and cross-examination of witnesses. Regarding his right to demand the nature and cause of the accusation against him and his right to be heard, appellant fails to explain how his guilty plea waived these rights or how he was deprived of them. Because we conclude the record demonstrates appellant's guilty plea was intelligent and voluntary and any error in failing to admonish him was harmless, we resolve his second and fourth issues against him.

In his third and fifth issues, appellant contends that the trial court erred in failing to explain to him that the bifurcated proceeding would result in a guilty verdict based solely on his judicial confession and that this would preclude him from evaluating the evidence before deciding whether to change his plea. According to appellant, the trial court "created circumstances" that "evidently caused [him] to believe that he would be able to change his plea to not guilty after hearing the substantive evidence" which "violated appellant's due process right to awareness of the relevant circumstances." Appellant's argument is without merit.

First, appellant points to nothing in the record that would indicate anything other than he was informed the guilty verdict would be based solely on his judicial confession. The trial court specifically told appellant that he was free to withdraw his guilty plea until his judicial

confession was presented to the jury. After the jury was empaneled, appellant was told that the jury would be given the charge to find him guilty before they moved to the sentencing portion of the proceeding. Appellant did not object. Appellant then pleaded guilty before the jury and his judicial confession was admitted. Before the jury retired to deliberate, appellant's attorney argued "You heard Mr. Lott, he pled guilty in open court. Took responsibility for the offense. He is looking forward to the proper and just punishment in this case." The jury then returned a verdict of guilt and the court proceeded to the punishment phase of the trial. Again, appellant did not object. Although appellant moved for a directed verdict at the close of the State's case in the punishment phase on the ground that the State failed to prove every element of the offense, he never moved to withdraw his guilty plea. Accordingly, there is no indication in the record that appellant was not fully aware of the "relevant circumstances" surrounding his plea or that he was misled in any way concerning his ability to withdraw it.

Even if appellant was somehow prevented from exercising his right to timely withdraw his plea of guilty, such error is harmless because there is no evidence to suggest that he is not guilty or is guilty of only a lesser included offense. *See Payne v. State*, 790 S.W.2d 649, 651 (Tex. Crim. App. 1990) (en banc). All of the evidence presented at trial indicated that appellant had a sexual relationship with the complainant while she was his student. Because there was no factual dispute and the evidence of his guilt was overwhelming, we conclude any error that may have prevented appellant from withdrawing his plea did not contribute to his conviction or punishment. *See Abrego v. State*, 977 S.W.2d 835, 839 (Tex. App.—Fort Worth 1998, pet. ref'd). We resolve appellant's third and fifth issues against him.

## C. Misinformation in Punishment Evidence

In his sixth issue, appellant argues his right to due process was violated because he was sentenced based on materially untrue information. Specifically, appellant contends the State

mistakenly stated in front of the jury that appellant had violated the conditions of his bail bond by continuing to have a relationship with the complainant until shortly before trial. Although bonds in cases like these typically contain a prohibition on contacting the victim, the State concedes that appellant's bond did not include a "no contact" order.[1] Appellant argues that the introduction of the erroneous information necessarily affected the jury's assessment of punishment because "any reasonable jury would conclude that if appellant would not adhere to bond conditions, he was not a suitable candidate for community supervision."

To constitute a due process violation, the record must show that the false information introduced at trial was material in that there is a reasonable likelihood that it affected the judgment of the jury. *See Ex Parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012). The materiality of the information must be examined in the context of the other evidence presented at trial. *Cf. Ex Parte Weinstein*, 421 S.W.3d 656, 669 (Tex. Crim. App. 2014). In this case, the jury was shown a videotape of appellant's interview with the police on the day he was arrested. In that interview, the officer informed appellant that if he was able to bond out of jail, contacting the complainant under any circumstances would "not be a good idea." Appellant agreed.

Later, when one of appellant's character witnesses testified that appellant had not violated any laws while out on bond, the prosecutor stated that appellant had continued his relationship with the complainant after being arrested in violation of the terms of his bond. Appellant's attorney objected and stated that appellant had never been given any conditions on his bond and he had only been told "informally" that he should not continue to see the complainant. The attorney then stated that if the State was going to make an issue of the alleged bond violation, it should be required to prove the conditions of the bond. Although the trial court

---

[1] Appellant does not assert, and the evidence does not show, that the State was aware of this fact at the time of the trial.

overruled the objection, the prosecutor did not mention the alleged bond violation again in front of the jury. During closing argument, the prosecutor referenced the fact that appellant continued to contact the complainant after he was arrested, but stated only that appellant did this despite being instructed by a police officer not to do so.

Appellant contends there is a reasonable probability that the misinformation about his bond conditions affected his sentence in that, but for the misinformation, the jury would have considered giving him a shorter sentence and recommending probation. As evidence of this, appellant points to a note the jury sent the trial judge during deliberations. The note contained the following two questions:

> (1) If sentenced to prison when would defendant be eligible for parole
>
> > (A) if sentenced 15 - 20 years?
> >
> > (B) 10 - 15 years?
>
> (2) Please explain why on 1st day of jury selection why the sentence was divided as follows
>
> > 2 - 10 years
> >
> > 11-20 years

The trial court responded that the jury had already been given the applicable law. The court's charge instructed the jury that appellant would become eligible for parole when his time served equaled one-fourth of the sentence imposed. The charge also instructed the jury that the punishment authorized for appellant's offense was not less than two years and not more than twenty years confinement. The jury was informed that it could consider recommending community supervision if the punishment it assessed was ten years' confinement or less and the law required the trial court to place appellant on probation if such a recommendation was made. Finally, the jury was informed that the matter of probation was entirely in their hands and that their decision would be final.

Appellant suggests the jury's note indicates it was considering a sentence of two to ten years but decided to impose a longer sentence to remove the possibility of appellant receiving probation. Appellant argues there is a reasonable probability this occurred because the misinformation about his violating the conditions on his bond led the jury to believe he would not adhere to the conditions of community supervision. In response to questions from the venire during voir dire, however, the jury was specifically told that it could sentence appellant to less than ten years' confinement without recommending probation. Accordingly, the jury's decision on the length of appellant's sentence was independent of its determination of whether to recommend probation. The jury was required to first determine the length of the sentence and, only if that sentence was ten years or less, would they be called upon to consider whether to recommend probation. The fact that the jury sentenced appellant to fifteen years' confinement, well outside the range for which it could consider recommending probation, indicates that the possibility of probation did not play a role in the jury's decision.

Furthermore, there was substantial evidence presented to support the jury's sentence. The testimony showed that appellant and the complainant began having sexual relations while the complainant was a student in appellant's high school government class. Appellant brought the complainant to his home where they had sex without the use of a condom. Appellant continued to have a sexual relationship with the complainant until his trial began. Before the complainant was called to testify, appellant telephoned her to encourage her and her family not to testify against him.

During jury selection, the complainant met another young woman being called as a witness. The woman stated that, in 2009 while she was a student of appellant's at a different high school, appellant made multiple advances towards her indicating that he wanted a romantic relationship with her. The complainant noted that this woman's appearance was strikingly

similar to her own and she came to the conclusion that she was not special to appellant, but that she was merely the type of girl to whom he was attracted. The complainant testified she believed appellant continued his relationship with her solely so that he could obtain her help in this case. She stated that although she had originally wanted appellant to receive probation so they could continue their relationship, she now wanted him to serve time in jail.

A third woman, who also resembled the complainant, testified that she had an intimate relationship with appellant in 2007 while she was a student in appellant's high school computer class. Appellant met with her at various locations including on campus, in a park, and at his house. The woman testified that appellant was controlling and behaved in a manner that made her embarrassed and scared. She felt guilty that she had not reported appellant's behavior after she heard he had a relationship with another student and she travelled to Dallas from Illinois to testify against him.

Accordingly, the evidence was uncontroverted that appellant had an improper relationship with at least two of his students and attempted to have an improper relationship with a third. The evidence also showed that appellant was controlling and manipulative in these relationships. Given this evidence we cannot say that the State's brief statement about an alleged bond violation, which was controverted by the defense, had any effect on the jury's punishment decision.

In addition to his complaint regarding the bond misinformation, appellant contends the jury was mistakenly informed that he could not be required to register as a sex offender and that he would be able to obtain employment as a teacher at a charter school. Appellant does not rely on these alleged instances of misinformation as part of his due process argument because, as he discusses later in his brief, he made no objection to the information at the time it was introduced and thus waived any error. *See Grado v. State*, 445 S.W.3d 736, 739–41 (Tex. Crim. App. 2014)

–11–

(numerous constitutional rights, particularly those that are evidentiary based, may be forfeited for purposes of appellate review if not properly preserved). Instead, appellant simply argues that this additional misinformation, when combined with the alleged bond misinformation, made him "appear to be even less suitable for community supervision." Appellant cannot obtain substantive appellate review by bootstrapping complaints that have been waived to one that has been preserved. *See Enciso v. Chmielewski*, 16 S.W.3d 858, 861 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Furthermore, as we discussed above, the length of appellant's sentence indicates that the possibility of probation did not play a role in the jury's decision. We resolve appellant's sixth issue against him.

### D. Ineffective Assistance

In his seventh issue, appellant contends he received ineffective assistance of counsel. The examples of ineffective assistance that he cites in his case are: (1) his purportedly uninformed plea; (2) his counsel's failure to correct the instances of alleged misinformation discussed above; and (3) his counsel's failure to request that the jury be instructed on the applicability of good-conduct time to his eligibility for parole. To prevail on a claim of ineffective assistance an appellant must show that his counsel's performance fell below an objective standard of reasonableness and a reasonable probability that, but for trial counsel's errors, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Failure to make the required showing of either deficient performance or sufficient prejudice will defeat a claim that counsel was ineffective. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Our review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable professional assistance. *See Garza v. State*, 213 S.W.3d 338, 347–48 (Tex. Crim. App. 2003). An ineffective assistance claim must be

firmly founded in the record and the record must affirmatively demonstrate that the claim has merit. *See Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012). For this reason, such claims are generally ill suited for direct appeal as the record is generally undeveloped, particularly where counsel's strategic choices are concerned. *Id.* Counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id.* In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). This is particularly true where, as here, the defendant fails to raise or support his ineffective assistance claim in a motion for new trial. *See Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011). Absent an opportunity for trial counsel to explain the conduct in question, we should not find ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Appellant first argues that he pleaded guilty based upon his counsel's failure to correct the bifurcation of proceedings which "amounted to erroneous advice from counsel in violation of trial counsel's duty to assure that appellant's decisions were based on correct information about the law." When a defendant challenges the validity of a plea entered on the advice of counsel, to obtain a reversal he must show a reasonable probability that, but for trial counsel's errors, he would not have pleaded guilty to the charged offense and would have insisted on going to trial. *See Ex Parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). In this case, appellant does not contend that he would not have pleaded guilty but for his counsel's "error." Instead, appellant argues that there is a reasonable probability he would have withdrawn his guilty plea if his trial had been conducted as a unitary proceeding. Essentially, appellant contends his counsel

should have informed him that the bifurcation of his trial, which allowed the jury to convict him before proceeding to the punishment phase, would prevent him from being able to hear the punishment evidence before he could decide whether to withdraw his plea. We have already decided above that whether or not appellant's counsel objected there was not reversible error in the trial court's bifurcating what should have been a unitary punishment proceeding.

In determining whether a defendant would not have pleaded guilty but for counsel's allegedly deficient advice, we consider "the circumstances surrounding the plea and the gravity of the misrepresentation material to the determination." *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999); *see also Ex Parte Ali*, 368 S.W.3d 827, 835–36 (Tex. App.—Austin 2012, pet. ref'd). The test is objective and turns on what a reasonable person in the defendant's shoes would do. *See Ali*, 368 S.W.3d at 835. In part because the motion for new trial did not attach any evidence nor was an evidentiary hearing conducted on it, there is no indication in this record of what advice appellant's counsel gave him. Nor is there anything in the record to indicate that appellant was told he would be able to hear the punishment evidence before he made his determination of whether to withdraw his plea. The record does indicate that appellant's strategy throughout his trial was to accept responsibility for his actions and seek probation based on his cooperation with the authorities and the fact that his relationship was with a woman of legal age to consent. A recording made at the time of appellant's arrest and shown to the jury shows appellant admitting his relationship with the complainant while she was his student. All the testimony presented at trial by both sides demonstrated appellant's guilt of the charged offense. The only indication appellant points to that he might have chosen to withdraw his guilty plea after hearing the punishment evidence is his counsel's unexplained motion for a directed verdict at the close of the punishment phase. But even appellant's oral motion for directed verdict made no mention that appellant wished to withdraw his guilty plea. Without

more, we cannot say that there is a reasonable probability that appellant's trial strategy abruptly changed and he would have withdrawn his plea in the face of overwhelming evidence of his guilt.

Appellant next contends that his trial counsel rendered ineffective assistance by failing to object to or correct various alleged instances of misinformation. The first instance about which appellant complains is the testimony of a community supervision officer that the defense called as a witness. The officer testified that "you do not have to register as a sex offender in this type of case." This statement, by itself, is true as appellant would not be required by statute to register as a sex offender based on this offense. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(5). Appellant presents no argument that the statement was inadmissible and the failure to object to admissible evidence is not ineffective assistance of counsel. *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd). But appellant contends the trial court could have required him to register as a condition of community supervision and, therefore, the officer's testimony was misleading and should have been corrected.

In his argument before the jury, appellant's counsel stressed that registration was not required in cases such as this to demonstrate that appellant's offense was not considered a sexual assault of a minor, but rather an adult relationship that was improper only because it involved a student and a teacher. Counsel's failure to object to the community supervision officer's testimony on registration could be considered part of a reasonable trial strategy. Furthermore, because the length of appellant's sentence made him ineligible for community supervision, any misinformation about the conditions of supervision he might have been subjected to would not have affected the judgment against him.

The next instance of alleged misinformation is testimony by a defense witness regarding appellant's ability to resume teaching after his conviction. In his effort to convince the jury to

recommend probation, appellant sought to assure them that he would not be able to teach if he were released. Appellant complains that his counsel failed to object to testimony suggesting that appellant would not be prevented by law from teaching in a private or charter school. Appellant cites to various Texas statutes and administrative code provisions showing that he would not be permitted to teach at a charter school after a felony conviction. *See e.g.,* 19 Tex. Admin. Code § 100.1151(a)(1) (2003) (Tex. Educ. Agency, Criminal History; Restrictions on Serving). However, appellant does not dispute that a felony conviction would not prevent him from being employed by a private school. Rather than discredit his own witness by parsing out the issue of employment at a charter school versus employment at a private school, appellant's counsel instead argued that it would be virtually impossible for appellant to obtain employment as a teacher at any school following a conviction for improper relationship with a student. We cannot say that this was not a reasonable strategy.

Appellant also claims his counsel was ineffective for failing to show the State was incorrect in its statements about the conditions of his bond and for agreeing that appellant was verbally directed not to see the complainant. Appellant's counsel objected when the State erroneously represented that appellant's bond conditions prohibited him from contacting the complainant and stated that appellant had not been given any conditions. The State did not mention the bond again in front of the jury. Absent any explanation by counsel for not taking the issue further, particularly in light of the fact that the matter was not raised again by the prosecution, we cannot say defense counsel's actions fell outside the scope of reasonable professional representation. *See Lopez*, 343 S.W.3d at 142–43.

As for appellant's contention that his counsel should not have agreed that he was verbally instructed to not see the complainant again, the jury was shown the video recording of the

conversation in which appellant was told that it would not be a good idea for him to contact her. The jury could, therefore, draw its own conclusions as to the meaning of the statement.

Finally, appellant argues that his counsel's performance was deficient because he failed to request that the jury charge include additional language in the court's instruction about the applicability of good-conduct time to his eligibility for parole. Appellant contends that part of his defense strategy was to convince the jury that ordering prison time would be futile because he would be paroled quickly and resources would be better served by placing him on community supervision. Because there is no record from which we may discern defense counsel's reasons for not requesting the additional language in the instruction, we must presume the strategy was a sound one. *Id.* Indeed, since the length of appellant's sentence indicates that the possibility of probation was not a factor in the jury's decision, it is entirely possible that appellant benefitted from the good-conduct instruction as given. An instruction informing the jury that appellant would be eligible for parole sooner might have resulted in a longer sentence.

After reviewing the record, we conclude appellant challenges the effectiveness of his counsel regarding disparate matters that were admissible or which appellant does not complain were inadmissible but nevertheless harmed him, neither of which supports his ineffective assistance of counsel issue. *See Wert v. State*, 383 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("failures to object to potentially inadmissible testimony are not sufficient, in themselves, to constitute deficient performance"); *Oliva*, 942 S.W.2d at 732 (failure to object to admissible evidence not ineffective assistance of counsel). At the very least, the challenged conduct was not "so outrageous that no competent attorney would have engaged in it." *See Goodspeed,* 187 S.W.3d at 392. We resolve appellant's seventh issue against him.

–17–

**E. Modification of Judgment**

In his eighth and final issue, appellant contends the trial court's judgment should be modified because it incorrectly reflects that his plea was not guilty rather than guilty. The State concedes this error. This Court has the power to modify incorrect judgments to make the record speak the truth when we have the necessary information to do so. *See Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Because we have sufficient information, we reform the judgment to correct the above errors.

CONCLUSION

We modify the trial court's judgment to reflect that appellant pleaded guilty to the charged offense. As modified the judgment is affirmed.

/ David Evans/
_____
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
130219F.U05

–18–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ANDREW SCOTT LOTT, Appellant

No. 05-13-00219-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1240454-M
Opinion delivered by Justice Evans. Justices
Francis and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under the section "Plea to the Offense" the judgment is reformed to state "Guilty."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 16th day of March, 2015.

–19–