

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-19-00195-CR

---

JEFFREY MICKENS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 123rd District Court
Panola County, Texas
Trial Court No. 2018-C-081

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

As Eleanor drove Jeffery Mickens to his residence in rural Panola County in early 2018, riding along were Eleanor's daughter, Regina,[1] and Regina's infant daughter, Barbara. Shortly after arriving at Mickens's residence, Eleanor was shot and killed by Mickens. In the same episode, Mickens abducted and shot Regina, abducted Barbara, and later shot at Panola County Sheriff's Deputy Christopher Welk.[2] Faced with five indictments from these events, Mickens waived a jury and, in a single proceeding, pled guilty to this and the four other indictments. In a single brief, he appeals all five convictions. In this case, we address Mickens's appeal of his conviction for aggravated kidnapping of Regina. *See* TEX. PENAL CODE ANN. § 20.04.

---

[1] We refer to the victim of this instant aggravated kidnapping as Regina. Because one of Mickens's victims was a child, we have used pseudonyms for her and her family to protect the anonymity of the child-victim.

[2] At the sentencing hearing, the State presented testimony and evidence about Mickens's crime spree over the night of February 21–22, 2018. Regina testified that she and her infant daughter were on their way to the home of Regina's mother, Eleanor. Eleanor had met and befriended Mickens at the local Tyson plant, where they both worked. The day of the events, Eleanor let Mickens do his laundry at her residence. Mickens asked Eleanor to take him to his residence. Around that time, Regina and her daughter arrived at Eleanor's residence, and Eleanor asked Regina to ride with her and Mickens to his residence.

After the four arrived at Mickens's home, he went inside for a few minutes, then returned to Eleanor's driver side window. Regina heard her mother say, "Please don't do this, please don't do this." Regina heard gunshots as Mickens shot and killed Eleanor.

Mickens then forced Regina out of the car and dragged her inside his small trailer house. He washed his hands, reloaded his pistol, and told Regina he was going to kill her and her infant daughter because Regina would testify against him. In the house, Regina grabbed at and struggled with Mickens over his pistol. She was able to escape the house and run toward a neighbor's house. As she ran, she heard gunshots. The neighbor let her in. Regina, who at that point did not know she had been shot three times by Mickens, begged the neighbor for help for her daughter, still in Eleanor's car. The neighbor's boyfriend returned home shortly and retrieved the infant, who was unharmed. Eleanor was dead by the time law enforcement arrived.

Several hours after these events, law enforcement personnel were processing and investigating the scene and searching for Mickens. A citizen arrived who said he lived in one of the nearby small trailers. The man told officers that his door was locked but that he never locked the door. Officers agreed to help him pry open the front door. Discovered in the trailer, Mickens shot at the officers through the door. A standoff of several hours ensued, but the Longview SWAT team was called and eventually shot "CS" or tear gas into the trailer to obtain Mickens's surrender.

We affirm the judgment in this case,[3] because (1) Mickens was competent to waive, and intelligently and knowingly waived, his right to counsel, after being sufficiently admonished; (2) Mickens knowingly and intelligently waived his right to a jury trial; and (3) Mickens knowingly and voluntarily pled guilty.

*(1)* *Mickens Was Competent and Intelligently and Knowingly Waived His Right to Counsel, After Being Sufficiently Admonished*

Mickens complains that the trial court did not sufficiently admonish him as to the potential hazards and dangers of representing himself at trial, as required by *Faretta v. California*, 422 U.S. 806 (1975). However, a review of the complete record shows that Mickens self-represented only at the June 6 pretrial hearing where he pled guilty to the five indictments. At the June 6 hearing, his standby counsel was with him, and Mickens consulted with that counsel at least once. When the three-day punishment phase of the trial took place, Mickens was represented by that appointed attorney.

A criminal defendant has a "constitutional right to conduct his [or her] own defense." *Faretta*, 422 U.S. at 836. Although an accused claiming this right does not need to possess "the skill and experience of a lawyer in order competently and intelligently to choose self[-]representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is

---

[3]On even date herewith, by separate opinions, we also affirm Mickens's other four convictions in the following cases: 06-19-00196-CR, aggravated kidnapping of Regina's infant daughter, Barbara; 06-19-00197-CR, murder of Eleanor, Regina's mother; 06-19-00198-CR, attempted capital murder of Deputy Christopher Welk; 06-19-00199-CR, aggravated assault with a deadly weapon of Regina.

3

made with eyes open.'" *Id*. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

A court reviewing a defendant's election of self-representation is not required to engage in any "formulaic questioning to establish a knowing and intelligent waiver" nor follow some "script for courtroom recitation by trial judges faced with this dilemma." *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). That said, neither does *Faretta* "authorize trial judges across this state to sit idly by doling out enough legal rope for defendants to participate in impending courtroom suicide; rather, judges must take an active role in assessing the defendant's waiver of counsel." *Id*. A trial court should inquire into a defendant's "age, educational background, legal experience, knowledge of the rules of evidence and trial procedure;"[4] but the defendant's "technical legal knowledge, as such, [i]s not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta*, 422 U.S. at 836.

Knowing the procedural history helps in understanding Mickens's complaints.

*a.      Pretrial*

On May 30, 2019, the trial court held a pretrial hearing at which Mickens expressed dissatisfaction with his court-appointed counsel, Hagan.[5] Mickens told the trial court that Hagan had not "done anything" for Mickens, had never asked him what happened on the night of the

---

[4]*Renfro v. State*, 586 S.W.2d 496, 500 (Tex. Crim. App. 1979).

[5]Hagan was reached via telephone; apparently Mickens had expressed his desire to speak to the court.

offenses, had not addressed Mickens's request to see a psychologist, and had not shown him discovery materials until Mickens asked.[6]

The trial court told Mickens that it would not release Hagan from his appointment to represent him. Instead, the court "highly encouraged" Mickens to let Hagan continue representing him and scheduled to reconvene the following week, at which time the court would admonish Mickens about self-representation.

*b.     Reconvened Pretrial*

On June 6, the pretrial was reconvened. Hagan told the trial court that he had met with Mickens in the week since the May 30 hearing. Hagan stated,

> [Mickens] indicated . . . that he wants me to continue to represent him. However, he is not wanting to participate in the proceedings. So exactly what he means by that, I'm not sure. So I'm assuming he wants me to represent him; he's just not cooperating with me or wanting to assist in his defense.[7]

However, despite this apparent resolution of the issue, the discussion became somewhat disjointed. The court asked Mickens if he wanted to represent himself at trial, adding, "I believe we're moving forward with the murder case only." Though the State confirmed this, appointed counsel Hagan objected, saying that he and Mickens were prepared to try all cases. Then, Mickens asked, "Is this here today if I want a jury trial, or trial by judge today, too?"

---

[6]The trial court asked Hagan if he opposed Mickens being evaluated by a psychologist; Hagan declined to answer that question in the presence of the State and told the court he had previously spoken on this subject with Mickens. As regards discovery, Mickens told the court Hagan had visited him, told Mickens that Hagan "had the police report and all this stuff and the video," and asked Mickens if he wanted to see it. Mickens said that he told Hagan that he did want to see the materials. Mickens said, "So I guess if I never asked for the police report, I never would have got it."

[7]Hagan added, "I guess, for the record, he tells me he believes he's being railroaded by the State and by his attorney, so."

5

At this point, the court explained Mickens's right to waive a jury trial and the bifurcation of criminal trials in Texas. Then the court asked whether Mickens wanted to have Hagan represent him in the trial of the five offenses. Mickens answered, "I will be representing myself." The trial court then told Mickens that Hagan would remain on the case as a standby counsel and that Mickens would "be held to the same level of skill and knowledge as a licensed attorney in the State of Texas," including "knowledge of the Texas Rules of Evidence [and] the Code of Criminal Procedure."

The issue of self-representation having been formally raised by Mickens, the trial court then began to question him, presumably to ascertain if his waiver of counsel was freely and voluntarily made.[8] The court established that Mickens was forty-nine years old, that he finished high school and never attended college, that his last job was with Tyson, that he had no legal experience, and that he had never represented himself in a court of law. When the court asked Mickens to explain why he wanted to represent himself, Mickens complained that he was "not getting any relief for nothing" from Hagan. The dialogue continued:

> THE COURT: Okay. And you're not doing this for sympathy or in hope of a lighter punishment, should you be found guilty?

> THE DEFENDANT: No, because I'm pleading "guilty" from the gate. So we're going to save the State a lot of time and a lot of money because when this first starts, I'm saying "guilty" to every charge that you give me.

---

[8]Where a defendant chooses to represent himself at trial, the record should "affirmatively show . . . he was voluntarily exercising his informed free will." *Faretta*, 422 U.S. at 835.

This was the first time Mickens expressed an intent to plead guilty. The trial court then began questioning Mickens about pleading guilty[9] to the charges. The court asked if Mickens wanted to speak with Hagan. Though Mickens answered that he did not, the reporter's record states, "(Counsel and defendant confer privately at counsel table.)" Immediately after conferring with Hagan, Mickens told the court that he "would like to waive the jury and have [the court] sentence" him.

This record establishes that Mickens was competent to waive his right to counsel and that he made this waiver intelligently and knowingly, after being made aware of the dangers and disadvantages of such. We believe, on this record, that he knew what he was doing and that his choice was "made with eyes open." *See Adams*, 317 U.S. at 279. Mickens self-represented for less than one hour in a pretrial matter in which he pled guilty to five indictments and at which he was attended by stand-by counsel. After that, Mickens was represented by counsel at a three-day punishment trial. We overrule this point of error.

*(2)    Mickens Knowingly and Intelligently Waived His Right to Jury Trial*

Mickens also complains that the record does not demonstrate knowing and intelligent waivers of his right to a jury trial in each case. After a review of the record, we disagree.

"[A]s a matter of federal constitutional law, the State must establish through the trial record an express, knowing, and intelligent waiver of jury trial by a defendant. A waiver of jury is not to be presumed from a silent record, at least on direct appeal." *Guillett v. State*, 677 S.W.2d 46, 49 (Tex. Crim. App. 1984).

---

[9]We will describe the trial court's admonishments regarding Mickens's pleas of guilty when we address that point of error.

7

Mickens claims that the trial court accepted his waiver of a jury trial without "engag[ing] in any colloquy regarding [Mickens]'s right to have a jury decide the issue of guilt or innocence and consider possible defenses to the charges and circumstances surrounding the case" and that the court also failed to warn Mickens "that waiving a jury trial could still allow the trial court to determine his guilt, or that [Mickens] could plead guilty and still have a jury determine his punishment." Mickens argues that, while he did execute a written jury waiver in each case and told the court he approved of each of those waivers, his "approval of the written waiver[s] did not illustrate that he waived his right to a jury trial knowingly and intelligently because it still contained no admonishments about the jury trial right."

Mickens made no indication that he wanted to waive his right to a jury until the trial court was questioning him about his wish to represent himself. The court asked, "And you're not [seeking to represent yourself] for sympathy or in hope of a lighter punishment, should you be found guilty?" Mickens answered that he intended to plead guilty to all charges.[10] The court asked if the State was opposed to this change in defense tactics. It was not. Appointed attorney Hagan then interjected:

> HAGAN: Can I --
>
> THE COURT: -- to talk to your counsel?
>
> HAGAN: Can I just ask him -- just very briefly talk to him just --
>
> THE COURT: Yes. Privately?

---

[10]A defendant pleading guilty waives his right to a jury trial on the issue of guilt/innocence. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *Gardner v. State*, 164 S.W.3d 393, 399 (Tex. Crim. App. 2005). Because of the unique way Mickens's case and discussions with the trial court evolved, we address the merits of his jury-waiver claim.

8

MICKENS:  I don't want to talk to him.

(Counsel and defendant confer privately at counsel table[.])

MICKENS:  I would like to waive the jury and have you sentence me.

This was the first time that waiver of a jury trial was mentioned.  It is a reasonable inference that Mickens made this decision based on advice from his attorney.

When the trial court asked the State if it opposed Mickens's choice to waive a jury for guilt/innocence, the State affirmed that it did not oppose it and clarified that it was Mickens's choice to decide if a jury or the trial court would decide his punishment, were he found guilty. The court then said it would have each indictment printed for Mickens's review and then asked if Mickens's decision was made "freely and voluntarily."  Mickens answered, "Yes."

Certainly, the trial court's question could have pertained to Mickens's decision to plead guilty or to his decision to waive a jury.  However, "whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend on the unique circumstances of each case." *Adams*, 317 U.S. at 278.  The day Mickens waived his right to jury trials and pled guilty to each indictment, the proceedings began with discussions over whether he would represent himself at trial.  This led to Mickens's *sua sponte* declaration of his intent to plead guilty in all five cases, which, in turn, led, after a brief consultation with attorney Hagan, to his waiver of a jury trial.  A week earlier, the court had explained to Mickens his options to "proclaim [his] innocence" at trial, to plead guilty and ask the court to sentence him, or to work out a plea bargain with the State.  The court also told Mickens "the last case that was tried here,

9

the jury acquitted the defendant of a first-degree felony. So, you know, actually, juries do acquit people."

Also, Mickens signed, in each case, a formal waiver of jury consistent with Article 1.13 of the Texas Code of Criminal Procedure, stating that, "after being duly sworn," he "freely and voluntarily waive[d] [his] right to a trial by jury in each aforementioned cause and enter[ed] a plea of guilty." Reviewing the entirety of the record, we find Mickens made knowing and voluntary waivers of his jury trial rights.

We overrule this point of error.

*(3)    Mickens Knowingly and Voluntarily Pled Guilty*

Mickens also complains that he did not enter his pleas of guilty knowingly or voluntarily. "No plea of guilty or nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Supp.).[11]

In determining whether a guilty plea was entered knowingly and voluntarily, we consider the totality of the circumstances viewed in light of the entire record. *Griffin v. State*, 703 S.W.2d 193, 196 (Tex. Crim. App. 1986); *Fluellen v. State*, 443 S.W.3d 365, 368 (Tex. App.—Texarkana 2014, no pet.). "[T]he record must affirmatively disclose that the defendant . . . entered his plea understandingly and voluntarily." *Brady v. United States*, 397 U.S. 742, 747 n.4 (1970); *see Boykin v. Alabama*, 395 U.S. 238, 243–44 (1969); *see also Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013). The trial court must admonish the defendant in

---

[11]The trial court admonished Mickens after the State read each indictment. We examine Mickens's plea and the court's admonishments separately, in each case, in the respective opinions.

10

substantial compliance with the requisites of Article 26.13 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (Supp.).

Mickens argues that the trial court failed to discuss with him "that by pleading guilty, [Mickens] would be waiving his right to further discovery, the appearance, confrontation, and cross-examination of witnesses, and the privilege against self-incrimination;" and his right to jury trials and counsel. However, our review of the record shows that those topics were covered over the course of the two pretrial hearings.

Mickens's right to representation by counsel was discussed throughout both hearings, as described above. During the second pretrial hearing, when Mickens made his impromptu declaration to plead guilty to all cases, he spoke briefly off the record with attorney Hagan, then told the court he wanted to waive a jury trial and have the court sentence him. Shortly thereafter, once the court confirmed Mickens's wish to plead guilty and waive a jury, Mickens said to the court, "That's what I was trying to ask you while ago." We take this to refer to a question from Mickens to the court, five pages earlier in the reporter's record: "Is this here today if I want a jury trial, or trial by judge today, too?" This suggests that Mickens was familiar with his right to a jury trial and his ability to waive that right. Discussing with Mickens his request to represent himself, the court stated, "[W]e've provided you with all the discovery. Did you get everything you requested last week?" Mickens answered in the affirmative.

We point out those instances to establish the context in which Mickens pled guilty. Further, these matters are not specifically required by Article 26.13 of the Texas Code of

11

Criminal Procedure. The only requirement, complained of by Mickens, is that the record shows he made his pleas of guilt freely and voluntarily.[12]

Mickens also complains that, in two cases, his pleas to attempted capital murder and aggravated assault of Regina (cause numbers 06-19-00198-CR and 06-19-00199-CR, respectively), the trial court did not formally and specifically advise him of the range of punishment. We will address those complaints in our opinions on those cases.[13]

In the instant case, the trial court told Mickens the allegation of aggravated kidnapping was "a first-degree felony offense" "punishable from five to 99 years or life in prison." Mickens testified that he understood. Before describing the range of punishment, the court established that Mickens had never been found mentally incompetent to stand trial by any court or medical professional, was a United States citizen, and could read and write the English language.

We find Mickens's plea of guilty to aggravated kidnapping of Regina was made freely and voluntarily. We overrule this point of error.

---

[12]The various requirements of Article 26.13 are not constitutionally required. *See Aguirre-Mata v. State*, 125 S.W.3d 473, 475–76 (Tex. Crim. App. 2003) (discussing *McCarthy v. State*, 394 U.S. 459, 464 (1969)). Discussing *Boykin*'s holding that the record must show "the defendant voluntarily and understandingly entered his pleas of guilty," the *Aguirre-Mata* court pointed out that the United States Supreme Court in *Boykin* required a trial court "to make sure [the defendant] has a full understanding of what the plea connotes and of its consequences." *Aguirre-Mata*, 125 S.W.3d at 475 (quoting *Boykin*, 395 U.S. at 244).

[13]Incidentally, in cause number 06-19-00199-CR, aggravated assault, the trial court did explain the specific range of punishment. The court failed to enunciate the range of punishment when accepting Mickens's pleas to cause numbers 06-19-00197-CR, murder, and 06-19-00198-CR, attempted capital murder.

We affirm the trial court's judgment in this case.[14]

                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:      August 26, 2020
Date Decided:        October 9, 2020

Do Not Publish

---

[14]Mickens also claims that his conviction in cause number 06-19-00199-CR for aggravated assault of Regina is precluded, based on double jeopardy, by the conviction in this case for aggravated kidnapping of Regina. As that claim attacks only the conviction in cause number 06-19-00199-CR, we address that complaint in our opinion in that case. Additionally, Mickens assails duplicate court costs. As that issue attacks court costs in the companion cases, only, we address those complaints in our opinions in cause numbers 06-19-00196-CR, 06-19-00197-CR, 06-19-00198-CR, and 06-19-00199-CR.